1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

### EASTERN DISTRICT OF CALIFORNIA

10

11  COREY LAMAR SMITH, et al.,

12              Plaintiffs,

13      v.

14  ARNOLD SCHWARZENEGGER, et al.,

15              Defendants.

16

17

18

Case No.  1:14-cv-00060-LJO-SAB

FINDINGS AND RECOMMENDATIONS RECOMMENDING GRANTING IN PART AND DENYING IN PART DEFENDANTS BEARD, BRAZELTON, BROWN, CATE, HARTLEY, HUBBARD, ROTHCHILD, SCHWARZENEGGER AND YATES' MOTION TO DISMISS AND GRANTING DEFENDANTS IGBINOSA AND WINSLOW'S MOTION TO DISMISS

(ECF No. 37, 38, 39, 61, 62, 64, 65)

OBJECTIONS DUE WITHIN FOURTEEN DAYS

19
20

        This action was filed on October 28, 2013.  Currently before the Court are two motions to

dismiss filed on May 5, 2014.

21
22

### I.

### PROCEDURAL HISTORY

23
24
25
26
27
28

        Plaintiffs Corey Lamar Smith, Dion Barnett, Christopher Garner, Rodney Ray Roberts,

Jeremy Romo, and Danny Dallas ("Plaintiffs") filed a complaint in this action against Defendants

Arnold Schwarzenegger, Jeffrey A. Beard, Paul D. Brazelton, Matthew Cate, J. Clark Kelso,

James D. Hartley, Susan L. Hubbard, Deborah Hysen, Dr. Felix Igbinosa, Tanya Rothchild, State

of California, Dr. Dwight Winslow, James A. Yates, and Edmund G. Brown in the Sacramento

1   Division of the Eastern District of California on October 28, 2013.  (ECF No. 1.)  On January 16,

2   2014, this action was transferred to the Fresno Division of the Eastern District of California.

3   (ECF No. 7.)  On January 28, 2014 an order issued relating this action to Jackson et al. v. State of

4   California, et al., 1:13-cv-01055-LJO-SAB, a class action raising similar claims.  (ECF No. 15.)

5   On this same date, Plaintiffs filed a first amended complaint alleging reckless exposure to

6   dangerous conditions and deliberate indifference to serious medical needs in violation of the

7   Eighth Amendment and negligence under California law.  (ECF No. 14.)

8         On March 27, 2014, this action was related to Beagle et al. v. Schwarzenegger, et al.,

9   1:14-cv-00430-LJO-SAB, a similar multi-Plaintiff action.  Beagle et al. v. Schwarzenegger, et al.,

10  1:14-cv-00430-LJO-SAB at ECF No. 14.

11        On May 5, 2014, Defendants Beard Brazelton, Brown, Cate, Hartley, Hubbard, Rothchild,

12  Schwarzenegger, and Yates filed a motion to dismiss and request for judicial notice.  (ECF Nos.

13  37, 38.)  On this same date, Defendants Igbinosa and Winslow filed a motion to dismiss and a

14  notice of joinder in the motion to dismiss filed by the co-defendants.  (ECF Nos. 39, 40.)

15        On May 9, 2014, the Court issued an order to show cause why this action should not be

16  consolidated with the related cases.  (ECF No. 42.)  On May 20, 2014, Plaintiffs filed a notice of

17  voluntary dismissal of Defendant Kelso.  (ECF No. 46.)

18        On May 21, 2014, responses to the order to show cause were filed.  (ECF No. 47, 48.)  On

19  May 22, 2014, Defendant Kelso was dismissed without prejudice and an additional response to

20  the order to show cause was filed by Defendants Kelso and Winslow.  (ECF Nos. 49, 51.)  On

21  May 28, 2014, Defendants filed an opposition to the order to show cause response.  (ECF No.

22  53.)  On May 29, 2014, Plaintiffs filed a notice of related case and Defendant Hysen filed a notice

23  of joinder in Defendants' motion to dismiss.  (ECF Nos. 54, 55.)  On May 30, 2014, an order was

24  signed relating this action to Abukar et al. v. Schwarzenegger, et al., 1:14-cv-00816-SAB.  Id. at

25  ECF No. 11.

26        Plaintiffs filed two oppositions to the motions to dismiss on June 4, 2014.  (ECF Nos. 61,

27  62.)  On June 11, 2014, Defendants Beard, Brazelton, Brown, Cate, Hartley, Hubbard, Hysen,

28  Rothchild, Schwarzenegger, and Yates filed a reply, and Defendants Igbinosa and Winslow filed

1  a reply and notice of joinder in co-defendants reply.  (ECF Nos. 67, 65, 66.)

2       The Court heard oral arguments on June 18, 2014.  (ECF No. 68.)  Counsel Benjamin

3  Pavone appeared telephonically and counsel Gregg Zucker and David Elliot appeared for

4  Plaintiffs; counsel Michelle Angus appeared for Defendants Schwarzenegger, Beard, Brazelton,

5  Cate, Hartley, Hubbard, Hysen, Rothchild, Yates, and Brown; and counsel Susan Coleman

6  appeared for Defendants Igbinosa and Winslow.  Id.  Having considered the moving, opposition

7  and reply papers, the declarations and exhibits attached thereto, arguments presented at the June

8  18, 2014 hearing, as well as the Court's file, the Court issues the following findings and

9  recommendation.

10                                    **II.**

11                          **COMPLAINT ALLEGATIONS**

12       Plaintiffs state that Coccidioidomycosis ("Valley Fever") is carried by organisms that live

13  in the soil in certain limited geographic areas.  (First Am. Compl. ¶ 5, ECF No. 14.)  Most

14  individuals who contract Valley Fever have no symptoms or mild to moderate flu-like symptoms.

15  (Id. at ¶ 6.)  However, in certain ethnic and racial groups, including African-Americans, Filipinos

16  and other Asians, Hispanics, and American Indians, as well as those who are immune-

17  compromised or immune-suppressed, the disease can rapidly progress to a disseminated form.

18  (Id.)  In the disseminated form, the disease attacks multiple organs requiring the individual to

19  need life-long treatment and possibly causing brain damage or death.  (Id. at ¶ 7.)

20       Plaintiffs to this action are inmates or former inmates of the state correctional system that

21  contracted Valley Fever.  (Id. at ¶ 8.)  Plaintiffs contend that Defendants were aware of the danger

22  of contracting Valley Fever and failed to take action to protect them from the disease.  (Id. at ¶¶

23  9-12.)

24       Plaintiffs allege that Defendant Schwarzenegger was the Governor of California from

25  2003 through 2011 when the Valley Fever epidemic began and it sharply escalated during that

26  time period.  (Id. at ¶ 14.)  Defendant Schwarzenegger acknowledged that inmates were coming

27  down with Valley Fever but took no action to address the epidemic.  (Id.)  Defendant

28  Schwarzenegger had the authority to establish CDCR policies and practices and failed to adopt a

policy that would have prevented high risk inmates from being located at or remaining at hyper-endemic prisons. (Id. at ¶ 15.) Defendant Schwarzenegger condoned the decision by his subordinates to authorize major construction at or immediately adjacent to the hyper-endemic prison at Pleasant Valley. (Id. at ¶ 17.)

Defendant Brown, the current Governor of California, continued the state policies and practices put in place by Defendant Schwarzenegger. (Id. at ¶ 18.)

Defendant Beard is the current Secretary of the California Department of Corrections and Rehabilitation ("CDCR"). (Id. at ¶ 20.) Defendant Beard is responsible for the policies and practices of the CDCR as well as the day to day operational decisions. (Id.) Defendant Beard allowed the policies set in place by his predecessor to continue. (Id.)

Defendant Cate was the Secretary of CDCR from 2008 through 2012. (Id. at ¶ 21.) Defendant Cate created and continued policies that allowed transfer of inmates and failed to protect high risk prisoner groups. (Id.)

Defendant Hubbard is the former Director of CDCR's Division of Adult Operations and was personally involved in the decision to adopt a policy that continued to allow Plaintiffs to be housed in hyper-endemic prisons. (Id. at ¶ 22.) The policy acknowledged the health risk to medically compromised inmate groups but omitted exclusion of inmates at risk due to ethnicity or race. (Id.)

Defendant Rothchild is the former Chief of CDCR's Classification Services Unit ("CSU"). (Id. at ¶ 23.) The CSU is responsible for setting policies to assign or prevent assignment of inmates to prisons and making the ministerial decisions to assign each individual inmate to a specific prison. (Id.) Defendant Rothchild created and continued policies authorizing transfer of at risk inmates to hyper-endemic prisons. (Id.)

Defendant Hysen is the Chief Deputy Secretary of the CDCR Executive Office of Facility Planning, Construction and Management. (Id. at ¶ 24.) Defendant Hysen did not implement any environmental mitigation measures that were identified to reduce the risk of infection to Plaintiffs. (Id.)

Defendant Meyer is Senior Chief of CDCR Executive Office of Facility Planning,

1    Construction and Management.  (Id. at ¶ 25.)  Defendant Meyer did not implement any
2    environmental mitigation measures at the hyper-endemic prisons.  (Id.)

3        Defendant Winslow is the former Statewide Medical Director for CDCR.  (Id. at ¶ 27.)  In
4    June 2007, Defendant Winslow authored a memo disclosing that CDCR was aware of the risk of
5    infection at hyper-endemic prisons and that the risk was greater for certain ethnic groups.  (Id.)
6    The memorandum included recommendations to reduce the infection rate inside the prison.  (Id.)
7    In November 2007, Defendant Winslow made policy recommendations that did not include
8    exclusion of inmates based upon their racial or ethnic group.   (Id.)   Defendant Winslow
9    personally participated in the adoption of policies that allowed high risk inmates to continue to be
10   transferred to institutions that were experiencing epidemic levels of Valley Fever.  (Id. at ¶ 28.)

11       Defendant Brazelton was Warden of Pleasant Valley State Prison ("PVSP") from summer
12   of 2012 to fall of 2013.  (Id. at ¶ 29.)  Defendant Brazelton failed to take any action to correct the
13   unsafe conditions at the prison, to prevent Plaintiffs from being housed there, or to protect
14   inmates from contracting Valley Fever.  (Id.)

15       Defendant Yates was the Warden of PVSP from 2005 through 2012.  (Id. at ¶ 30.)
16   Defendant Yates was aware of the Valley Fever epidemic yet failed to adopt policies or
17   procedures to avoid the transfer of high risk inmates into the prison or protect those high-risk
18   inmates housed at PVSP.  (Id.)

19       Defendant Hartley is the current Warden at Avenal State Prison ("ASP").  (Id. at ¶ 31.)
20   Defendant Hartley made an independent decision to accept certain Plaintiffs at ASP.   (Id.)
21   Defendant Hartley is responsible for the operations of ASP and continued the policy to accept at-
22   risk prisoners and failed to implement basic remedial measures to make the facility safe.  (Id.)

23       Defendant Igbinosa is the Medical Director at PVSP.  (Id. at ¶ 32.)  Defendant Igbinosa
24   was aware of the epidemic incidence rates of disease and medical risks to Plaintiffs and failed to
25   take any action to address the epidemic or reduce inmate exposure to the disease.   (Id.)
26   Defendant Igbinosa did not implement a prison-level policy of screening inmates for risk of
27   contracting Valley Fever.  (Id.)

28       Plaintiffs contend that Defendants have had notice of the risk of Valley Fever for over

fifty years based upon publications in the American Journal of Public Health.  (Id. at ¶¶ 53-55.)
Between 1987 and 1997, the CDCR built eight prisons within the endemic and hyper-endemic
regions of the Central Valley.  (Id. at ¶ 55.  Plaintiffs contend that PVSP was extraordinarily
dangerous in regards to exposing inmates to Valley Fever because the soil surrounding and under
PVSP is densely contaminated with Coccidioides fungus.  (Id. at ¶¶ 56, 58.)  The prison grounds
contain broad expanses of bare dirt without any vegetation which allows the spores to circulate in
the air and into the buildings.  (Id. at ¶ 59.)

     In November 2004, Renee Kanan, Deputy Director of Health Care Services, wrote a
memo to all health care managers, staff and CDCR officials regarding Valley Fever and its origin
in soil.  (Id. at ¶ 60.)  The memo stated that Central Valley prisons are located within areas that
host the fungus in the soil; Valley Fever can be lethal for people exposed to the fungus; winds and
construction activity may cause the organism to be blown into the air where it could be inhaled;
this may cause a percentage of individuals to catch pneumonia or disseminated disease; the risk of
disseminated disease is highest in American Indians, Asians, Blacks, and immuno-compromised
individuals.  (Id. at ¶ 61.)  Plaintiffs contend this memo was and is still widely distributed within
CDCR.  (Id. at ¶ 62.)  A compromised immune system can be caused by chronic diseases such as
diabetes, HIV, lung disease, organ transplant, or taking TNF inhibitors as medication for
arthritis.  (Id. at ¶ 89.)  Individuals over the age of fifty five have also been found to be at
increased risk of developing severe disseminated disease.  (Id.)

     In 2005, PVSP began to experience an epidemic of Valley Fever.  (Id. at ¶ 63.)  The
infection rates at PVSP were as much as 1,000 times the rate seen in the local population.  (Id. at
¶ 64.)  An October 27, 2006 memo described the infection rates within the CDCR and the rates at
PVSP had increased by more than 445% between 2001 and 2005, and by over 2,500% by 2006.
(Id. at ¶¶ 65, 66.)

     In 2005 a prisoner rights group sent an informational briefing to Defendant
Schwarzenegger describing the threat of Valley Fever and the threat to African-Americans,
Filipinos, elderly inmates, and the immune-compromised.  (Id. at ¶ 102.)  In 2006, the prison
system accounted for 30% of all Valley Fever cases reported to the State Department of Health.

1    (Id. at ¶ 67.)

2           After the 2005 outbreak at PVSP, California Corrections Health Care Services

3    ("CCHCS") requested and received assistance from the California Department of Public Health

4    ("CDPH") in assessing and controlling cocci at PVSP.  (Id. at ¶ 69.)  CDPH reported that the rate

5    of Valley Fever cases at PVSP was 38 times the rate of residents of Coalinga and 600 times the

6    rate in Fresno County.  (Id. at ¶ 70.)  The increased rate at CDPH was reported as associated with

7    increased outdoor time, pre-existing health conditions, and African-American race.  (Id. at ¶ 70.)

8           An August 2006 internal memorandum confirmed that Defendants were aware that

9    inmates were being housed in hyper-endemic locations.  (Id. at ¶ 71.)  During 2006 through 2010

10   the rates of Valley Fever at PVSP, ASP, Wasco State Prison, and North Kern State Prison were

11   significantly higher than rates in the counties in which they are located.  (Id. at ¶ 72.)  Of the

12   twenty-seven inmates who died of Valley Fever between 2006 and 2010 sixty eight percent of

13   them were African-American.  (Id. at ¶ 74.)  The rapid and continued increase in Valley Fever at

14   PVSP in 2005/2006 was attributed to new construction next to the prison.  (Id. at ¶ 75.)

15   Defendants increased this risk by deciding to construct a new mental hospital facility immediately

16   adjacent to the prison.  (Id. at ¶ 76.)

17          Following the start of construction, the number of Valley Fever cases increased.  (Id. at ¶

18   77.)  By mid-August 2006, PVSP had recognized 300 new cases of Valley Fever.  (Id.)  The

19   excavation and construction adjacent to the prison placed an inordinate amount of Coccidioides

20   spores into the air in and around the prison.  (Id. at ¶ 78.)

21          In 2006 and 2007, a Fresno County Grand Jury evaluated inmate health status at PVSP

22   and made a series of recommendations.  (Id. at ¶ 96.)  The report stated that inmates and staff

23   continue to be at great risk from Valley Fever, and that African-American, Hispanic, Filipino, and

24   other Asian inmates were at a far greater risk than other ethnicities.  (Id. at ¶¶ 97, 100.)  These

25   reports were issued to Defendants Beard, Brazelton, Yates, and Cate and were forwarded to other

26   CDCR officials.  (Id. at ¶ 98.)

27          In January 2007, a study by the California Department of Public Health, Center for

28   Infectious Disease was published.  (Id. at ¶ 109.)  The study found that the number of cases of

1   Valley Fever reported at PVSP in 2005 was three times that of the rest of Fresno County.  (Id. at ¶

2   110.)  The study reported that individuals with a suppressed immune system, African-Americans,

3   Hispanics, Filipinos, and other Asians are at a higher risk of developing disseminated disease.

4   (Id. ¶ 110.)   The study, which was widely circulated within CDCR, recommended relocating

5   those inmates at highest risk to areas not in the hyper-endemic area and to take steps to minimize

6   exposure to Valley Fever, including ventilation, respiratory protection and dust suppression and

7   soil control.  (Id. at ¶ 111.)

8        In a January 11, 2007 memo to the CDCR, the Department of Public Health ("DPH")

9   informed the CDCR that studies have suggested that the risk of complications is increased for

10  individuals of African or Filipino descent and heavily immuno-suppressed individuals.  (Id. at ¶

11  92.) The DPH concluded that exclusion of these high-risk inmates was the most effective method

12  to decrease the risk of Valley Fever infections.  (Id.)

13       In June 2007, CCHCS issued recommendations, including landscaping with ground cover

14  and concrete, diverting and relocating inmates at high risk, and not expanding prison beds in the

15  hyper-endemic areas, especially at PVSP.  (Id. at ¶ 80.)  In August 2007, Prison Legal News ran

16  an article detailing the source, exposure, prognosis, and risk factors for Valley Fever in the

17  subject prisons.  (Id. at ¶ 113.)

18       In September 2007, Defendant Schwarzenegger proposed that California construct new

19  dormitories at PVSP to expand the number of prisoners housed there.  (Id. at ¶ 103.)  When

20  questioned during a press conference about the proposed expansion exposing more prisoners to

21  Valley Fever, Defendant Schwarzenegger indicated he was not concerned and that they would go

22  ahead and build.  (Id. at ¶ 104.)

23       In November 2007, prison officials issued a formal exclusion policy for inmates with

24  certain medical conditions, but did not include inmates at high risk due to their ethnicity or race.

25  (Id. at ¶ 81.)  During 2007, CDCR Facilities Department officials, including Defendant Hysen,

26  stated that they were preparing measures to reduce the risk to inmates of contracting Valley Fever

27  at PVSP.  (Id. at ¶ 116.)   The plan, which included extensive measures to control inmate's

28  exposure  to  contaminated  soil  and  ventilation  systems  inside  the  buildings  was  never

1     implemented. (Id. at ¶¶ 117, 118.)

2         During 2007, Defendant Yates was quoted in an article by the New York Times as stating

3 that inmates and staff at PVSP contracted Valley Fever from breathing the spores in the air as

4 they walk around. (Id. at ¶ 120.) From 2007 through 2010, the rate of Valley Fever at PVSP was

5 six times higher than the rate of infection at the adjacent state mental health facility. (Id. at ¶ 82.)

6         After a federal health agency project was terminated, in December 2009 officials from the

7 Centers for Disease Control and National Institute for Occupational Safety and Health wrote

8 letters to the CDCR stating that African-American, Asian or Filipino, or immuno-compromised

9 individuals were at a greater risk of developing disseminated infection. (Id. at ¶ 83.)

10         In 2011, CDCR sprayed a temporary sealant on some soils at PVSP. (Id. at ¶ 181.)

11 During an October 2011 press conference, Defendant Schwarzenegger announced that the State's

12 policy and practice of transferring prisoners to PVSP would continue unabated despite the risk of

13 Valley Fever. (Id. at ¶ 84.) An April 2012 study reported that seven out of 100 inmates at PVSP

14 became infected with Valley Fever. (Id. at ¶ 68.)

15         In April 2012, the CCHCS released a report finding that CDCR had done nothing between

16 2006 and 2010 that had any effect on cocci incidence rates at PVSP and ASP. (Id. at ¶ 125.) The

17 report indicated that Valley Fever incidence rates were drastically elevated and that African-

18 Americans in particular were at an increased rate of contracting Valley Fever in its disseminated

19 form. (Id. at ¶126.) The report found that PVSP had extensive areas of un-stabilized soil on its

20 grounds. (Id. at ¶127.) Over 80 CDCR facility staff members have contracted Valley Fever and

21 there has been at least one correctional officer who died from the disease. (Id. at ¶ 129.)

22         In November 2012, the court-appointed receiver managing the prison health care system

23 issued a recommendation. (Id. at ¶ 189.) The document recommended ceasing to transfer

24 African-Americans, persons with diabetes, and those with no HIV results to PVSP and ASP. (Id.)

25         In March 2013, CDCR installed dust control devices, such as air filters and door sweeps,

26 in some prison facilities. (Id. at ¶ 181.) In April 2013, the Receiver's staff experts found that

27 African-Americans were at a 90% higher risk for disseminated cocci disease than white inmates,

28 and other race categories were at 100% increased risk, and inmates over 55 years of age had a

1   60% increased risk.  (Id. at ¶ 190.)

2       CDCR publishes an orientation manual for all medical personnel that discusses the

3   Coccidioiditis epidemic in detail and notes that African-Americans, Filipinos, and those with

4   compromised immune systems or chronic diseases are at an increased risk of contracting Valley

5   Fever.  (Id. at ¶ 106.)   The orientation manual is authorized and promulgated by Defendant

6   Winslow.  (Id. at ¶ 107.)

7       Plaintiffs allege that the exposure to dangerous conditions subjects them to cruel and

8   unusual punishment and exhibited deliberate indifference to serious medical needs in violation of

9   the Eighth Amendment and is negligence under California law.  (Id. at ¶¶ 278-294; 299-303; 305-

10  311.) Plaintiffs seek monetary damages.  (Id. at 68-69.[1])

11      **A.    Plaintiff Dion Barnett**

12      Plaintiff Barnett is a thirty-six year old African-American male who was paroled in 2013.

13  (Id. at ¶ 202.)  Plaintiff Barnett was transferred to PVSP in September 2010, and remained there

14  until transferred to Mule Creek in December 2012.  (Id. at ¶ 203.)  Plaintiff Barnett became ill in

15  late December 2011, and was diagnosed with Valley Fever in April 2012.  (Id. at ¶ 204.)  Plaintiff

16  Barnett cannot physically exert himself without feeling winded and at times suffers acute pain.

17  (Id. at ¶ 205.)  Plaintiff Barnett has been informed that he will likely have permanent impairment

18  of his left lung, joint and back problems, low energy, and shortness of breath upon exertion.  (Id.

19  at ¶ 207.)

20      **B.    Plaintiff Danny Dallas**

21      Plaintiff Dallas is a fifty-four year old African-American male who was released from

22  custody on June 11, 2013.  (Id. at ¶ 212.)  Plaintiff Dallas was housed at PVSP from April 18,

23  2010 until his release from custody.  (Id. at ¶¶ 213, 218.)  Plaintiff Dallas contracted Valley Fever

24  sometime between November and December 2012 and he was hospitalized.  (Id. at ¶ 213.)

25  Plaintiff Dallas has had lower back pain and bowel problems since 1976 and his strength and

26  body functions have continued to weaken since contracting Valley Fever, exacerbating his

27  _____

28  [1] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

chronic illness.  (Id. at ¶ 220.)  Plaintiff Dallas suffers from joint pain, inflammation of his legs and feet, coughing, and other ailments related to Valley Fever.  (Id. at ¶ 222.)

### C.      Plaintiff Christopher Garner

Plaintiff Garner is a thirty-eight year old part African-American, part Asian.  (Id. at ¶ 227.)  Plaintiff Garner was housed at PVSP in May 2010.  (Id.)  Plaintiff Garner was diagnosed with Valley Fever in August 2011.  (Id. at ¶ 229.)  The disease has spread to his joints, bones and other organs and Plaintiff Garner has sharp pains from the disseminated infection.  (Id. at ¶ 232.)  Plaintiff has recently begun to suffer from eye pain and impaired eyesight.  (Id.)

### D.      Plaintiff Rodney Ray Roberts

Plaintiff Roberts is a thirty year old part African-American.  (Id. at ¶ 238.)  Plaintiff Roberts was sent to ASP in 2010.  (Id. at ¶ 239.)  Since contracting Valley Fever, Plaintiff Roberts has experienced almost a constant state of fatigue.  (Id. at ¶ 240.)  Plaintiff was treated for Valley Fever and six months later was retested and prison doctors informed him that he does not have Valley Fever and has never had it.  (Id. at 242.)

### E.      Plaintiff Jeremy Romo

Plaintiff Romo is a thirty-three year old Hispanic male who has been released from custody.  (Id. at ¶¶ 250, 251.)  Plaintiff was housed at the California Correctional Institution in Tehachapi ("CCI") from July to November 2012 when he was transferred to Soledad.[2]  (Id. at ¶¶ 251, 253.)  On September 19, 2012, Plaintiff Romo was hospitalized and diagnosed with pneumonia and Valley Fever.  (Id. at ¶ 252.)  Plaintiff Romo suffers from skin lesions on his legs and feet, has scar tissue in his lungs and is easily fatigued, short of breath, and is generally lethargic.  (Id. at ¶ 254.)  Plaintiff has constant debilitating pain in his joints.  (Id.)

### F.      Plaintiff Corey Lamar Smith

Plaintiff Smith is a thirty-seven year old African-American who was transferred to PVSP in 2009, and diagnosed with Valley Fever in December 2011.  (Id. at ¶¶ 262, 263, 269.)  Plaintiff has skin rashes and is no longer able to exercise without debilitating pain.  (Id. at ¶ 264.)

---

[2] Plaintiff contends that he spent up to five hours per day working in the exercise yard at ASP, however, according to the complaint, Plaintiff was never housed at ASP.  (ECF No. 14 at ¶¶ 259, 260.)

1

**III.**

2

**LEGAL STANDARD**

3       Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss on

4   the grounds that a complaint "fail[s] to state a claim upon which relief can be granted."  A

5   complaint must contain "a short and plain statement of the claim showing that the pleader is

6   entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "[T]he pleading standard Rule 8 announces does not

7   require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-

8   unlawfully harmed-me accusation."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell

9   Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  In assessing the sufficiency of a

10  complaint, all well-pleaded factual allegations must be accepted as true.  Iqbal, 556 U.S. at 678-

11  79.  However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere

12  conclusory statements, do not suffice."  Id. at 678.

13      In deciding whether a complaint states a claim, the Ninth Circuit has found that two

14  principles apply.  First, to be entitled to the presumption of truth the allegations in the complaint

15  "may not simply recite the elements of a cause of action, but must contain sufficient allegations of

16  underlying facts to give fair notice and to enable the opposing party to defend itself effectively."

17  Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).  Second, so that it is not unfair to require the

18  defendant to be subjected to the expenses associated with discovery and continued litigation, the

19  factual allegations of the complaint, which are taken as true, must plausibly suggest an

20  entitlement to relief.  Starr, 652 F.3d at 1216.

21

**IV.**

22

**ANALYSIS**

23      All defendants appearing move to dismiss this action under Rule 12(b)(6) on the grounds

24  that the complaint 1) fails to allege any Defendant personally caused the alleged constitutional

25  deprivations; 2) fails to state sufficient facts to demonstrate deliberate indifference on the part of

26  any Defendant; 3) Plaintiffs Garner, Roberts, and Smith's claims for future medical care are not

27  ripe; 4) the complaint includes misjoined parties and claims; 5) Plaintiffs failed to comply with

28  the Government Tort Claim Act; and 6) the complaint violates Rule 8 of the Federal Rules of

1   Civil Procedure.   (Defs. Beard, Brazelton, Brown, Cate, Hartley, Hubbard, Rothchild,

2   Schwarzenegger and Yates' Mot. to Dismiss 1-2, ECF No. 37.)  Similarly, Defendants Igbinosa

3   and Winslow move to dismiss the complaint on the ground that the complaint fails to show that

4   they personally violated the constitution.   (Defs. Igbinosa and Winslow's Mot. to Dismiss Pls.'

5   First Am. Compl. 9-13, ECF No. 39.)

6        Plaintiffs oppose the motions arguing that the complaint is sufficiently detailed to survive

7   a motion to dismiss, Plaintiffs can bring a claim for future medical care, Defendants failure to

8   comply with Government Code Section 53501 excuses Plaintiffs from the requirement that they

9   submit claim forms to the Victim Compensation Board, and the parties are properly joined in this

10  action.  (Pls.' Opp. to Defense 12(b)(6) Mot. 13-31, ECF No. 61; Pls.' Opp. to Defs. Igbinosa and

11  Winslow's Mot. to Dismiss 10-13, ECF No. 55.)

12       **A.      Personal Liability**

13       Defendants argue that Plaintiffs' first amended complaint fails to state a claim as it does

14  not allege that Defendants personally violated the United States Constitution.  (ECF No. 37-1 at

15  11-14.)  Plaintiffs counter that the complaint contains sufficiently detailed facts to state a claim

16  against the defendants in this action.  (ECF No. 61 at 13-16.)

17       Section 1983 provides a cause of action for the violation of Plaintiff's constitutional or

18  other federal rights by persons acting under color of state law.   Nurre v. Whitehead, 580 F.3d

19  1087, 1092 (9th Cir 2009); Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006);

20  Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).   To state a claim, Plaintiffs must

21  demonstrate that each defendant personally participated in the deprivation of his rights.   Iqbal,

22  Iqbal, 556 U.S. at 677; Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-21 (9th Cir.

23  2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones, 297 F.3d at 934.

24       Under section 1983, liability may not be imposed on supervisory personnel for the actions

25  or omissions of their subordinates under the theory of respondeat superior.  Iqbal, Iqbal, 556 U.S.

26  at 677; Simmons, 609 F.3d at 1020-21; Ewing, 588 F.3d at 1235; Jones, 297 F.3d at 934.  "A

27  supervisor may be liable only if (1) he or she is personally involved in the constitutional

28  deprivation, or (2) there is 'a sufficient causal connection between the supervisor's wrongful

conduct and the constitutional violation."  Crowley v. Bannister, 734 F.3d 967, 977 (9th Cir. 2013) (citations omitted).  Supervisors may be held liable where they "participated in or directed the violations, or knew of the violations and failed to act to prevent them."  Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); accord Starr, 652 F.3d at 1205-06; Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009).

During the June 18, 2014 hearing defense counsel argued that the present allegations are sufficient to state a claim where they are plausible and under Iqbal the court may infer knowledge from the facts pled in the complaint.  However, under Twombly and Iqbal "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Iqbal, 556 U.S. at 678.  This requires factual content for the court to draw the reasonable inference that the defendant is liable for the alleged misconduct.  Id.  A complaint stops short of the line between probability and the possibility of relief where the facts pled are merely consistent with a defendant's liability.  Id.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has not shown that the plaintiff is entitled to relief.  Id.  Further, while the court is to accept all "well pleaded factual allegations" in the complaint as true, id. at 679, it is not bound to accept as true labels, conclusions, formulaic recitations of the elements of a cause of action or legal conclusions couched as factual allegations, Twombly, 550 U.S. at 555.  The conclusory allegations in the complaint are not entitled to the presumption of truth.  Iqbal, 556 U.S. at 681.

Defense counsel also argued that the court should allow the complaint to go forward on what the Court deems are conclusory allegations to allow discovery to determine if the defendants could be liable for the conduct alleged.  However, when the allegations in the complaint do not state a claim for relief the court is to address the deficiency to avoid the expenditure of time and money by the parties and the court.  Twombly, 550 U.S. at 558.

      1.     Defendant Brown

Plaintiffs appear to be blurring the line between official capacity and personal capacity lawsuits and are attempting to bring claims against current officials based solely on their position

and the policies and procedures put in place by their predecessors.[3]  In an official capacity lawsuit it is appropriate to name the current official as a defendant in the action, Fed. R. Civ. P. 25(d), however to state a claim against the current official in their personal capacity requires allegations showing that the official was personally involved, or there was a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.  Crowley, 734 F.3d at 977.  Plaintiffs have failed to set forth allegations to show that Defendant Brown had knowledge of a risk to Plaintiffs and failed to act.  Plaintiffs' conclusory allegations that Defendant Brown knew of the risk and continued the state policies and practices put in place by Defendant Schwarzenegger is insufficient to show that Defendant Brown participated in any violation that caused injury to Plaintiffs in this action.  Defendants' motion to dismiss Defendant Brown should be granted.

                    2.    Defendants Beard and Brazelton

      Plaintiffs contend that Defendants Beard and Brazelton had knowledge of the risk of Valley Fever due to the Grand Jury reports.  However, the complaint fails to allege when these reports were provided to Defendants Beard and Brazelton.  Additionally, the complaint does not identify the position at CDCR that these defendants held during the time period in which Plaintiffs contracted Valley Fever.  Therefore, there is no information contained in the complaint from which the Court can infer that Defendants Beard or Brazelton were liable for the policy to house high risk inmates in the hyper-endemic area.  Absent such factual allegations the complaint is insufficient to link Defendants Beard or Brazelton to the alleged violations.

      Plaintiffs allege that Defendant Beard is the current Secretary of the CDCR being appointed to the position in December 2012.  (ECF No. 14 at ¶ 20.)  All Plaintiffs to this action contracted Valley Fever between August 2011 and December 2012, prior to Defendant Beard becoming the Secretary.  (Id. at ¶¶ 202-269.)  Therefore, Defendant Beard cannot be liable in his current position for the injuries that occurred to Plaintiffs before he became Secretary.  Plaintiffs

---

[3] Plaintiffs are only seeking damages in this lawsuit.  Plaintiffs may not bring suit against Defendants in their official capacity.  "The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials acting in their official capacities."  Aholelei v. Dept. of Public Safety, 488 F.3d 1144, 1147 (9th Cir. 2007).

1    fail to include any allegations for the Court to infer that Defendant Beard was in a position that

2    would create liability for Plaintiffs' injuries prior to or when they contracted Valley Fever.

3         Further, Defendant Brazelton was the Warden of PVSP from summer 2012 to fall of 2013.

4    (Id. at ¶ 29.)   Plaintiff Dallas, the only Plaintiff to contract Valley Fever after Defendant

5    Brazelton became Warden, was housed at PVSP on April 18, 2010 and began experiencing

6    symptoms in November 2012.  (Id. at ¶ 213.)  While it is possible that Plaintiff Dallas contracted

7    Valley Fever during the two to three months after Defendant Brazelton becoming warden.

8    However, since Plaintiff was housed at PVSP for over two years prior to Defendant Brazelton

9    becoming Warden it is more probable that Plaintiff had contracted Valley Fever prior to

10   Defendant Brazelton assuming his position as Warden of PVSP and Plaintiff fails to state a

11   plausible claim against Defendant Brazelton.

12        Plaintiffs complaint fails to contain allegations to state a plausible claim that Defendants

13   Beard and Brazelton's actions after they were appointed as the Secretary of CDCR or Warden of

14   PVSP contributed to the plaintiffs injuries.   Absent such factual allegations the complaint is

15   insufficient to link Defendants Beard or Brazelton to the alleged violations.   The motion to

16   dismiss Defendant Beard and Brazelton should be granted.

17        3.      Defendants Hubbard, Rothchild, Hysen, and Hartley

18        Despite Plaintiffs' allegations that prison officials have known of the risk of Valley Fever

19   for over 50 years, the fact that medical journals have published articles does not show that the risk

20   was evident to Defendants in this action.   Based on the allegations in the complaint, it was not

21   until 2004 that a memo was provided to officials within the prison system which mentioned that

22   the risk of disseminated disease was highest in certain individuals.  (Id. at ¶ 61.)  In June 2007,

23   the CCHCS issued recommendations to address the spread of Valley Fever in the prison system

24   and in November 2007 prison officials adopted their exclusion policy.  (Id. at ¶¶ 80, 81.)  While

25   Plaintiffs set forth numerous allegations regarding information that was available after this time

26   period, it is what Defendants knew at the time that they acted or that Plaintiffs were housed at

27   ASP or PVSP and contracted Valley Fever that is relevant in making the analysis of whether the

28   complaint states a claim.  Further, Plaintiffs must set forth sufficient factual allegations to show

1   that each named defendant acted in a manner that would harm these individual plaintiffs.

2          While Plaintiffs allege that Defendants Hubbard, Rothchild, Hysen, and Hartley had

3   knowledge of the risks of Valley Fever to specific classes of inmates, the amended complaint fails

4   to allege that they held an office during the time period at issue in this action.   For instance,

5   Plaintiffs allege that Defendant Hubbard was the former director of CDCR's Division of Adult

6   Operations and issued a memo in November 2007 that "continued to allow Plaintiffs and others

7   who were members of high-risk groups to be housed in hyper-endemic prisons."  (ECF No. 14 at

8   ¶ 23.)

9          However, the complaint does not allege that Defendant Hubbard was involved in the

10  adoption of the policy that failed to exclude those inmates at high risk of developing disseminated

11  disease; nor does the complaint specify when she held this position; if she continued to hold the

12  position as more information became available as to the extent of the risk to inmates in these high

13  risk categories; or if Defendant Hubbard was director when any of these inmates were housed at

14  the subject prisons.   Plaintiffs' allegation that Defendant Hubbard issued a memo which

15  continued to allow inmates to be housed at the prisons is insufficient to show that Defendant

16  Hubbard was liable for the policy that injured Plaintiffs in this action.

17         Similarly, the complaint fails to allege any information from which the Court can infer

18  that Defendants Rothchild, Hysen, Meyer, or Hartley held the position stated in the complaint at

19  the time that Plaintiffs were subject to the violations alleged in the complaint.   To the extent that

20  Plaintiffs attempt to assert that the policies continue to violate the Constitution, Plaintiffs in this

21  action are no longer at risk of contracting Valley Fever.   Even if the policy has been continued by

22  a successor, Plaintiffs do not state a claim against current CDCR officials who were not involved

23  in the policy prior to the plaintiff being injured.   Plaintiff may not state a claim against current

24  officials where their conduct did not cause or contribute to a completed constitutional violation

25  that occurred in the past.   See George v. Smith, 507 F.3d 605, 609-10 (7th Cir. 2007) (Only those

26  who contribute to a constitutional violation are liable.  "A guard who stands and watches while

27  another guard beats a prisoner violates the Constitution; a guard who rejects an administrative

28  complaint about a completed act of misconduct does not.")

Plaintiffs' complaint fails to state a claim against Defendants Hubbard, Rothchild, Hysen, or Hartley; and the Court recommends that the motion to dismiss be granted as to these defendants.

    4.      Defendants Schwarzenegger, Yates, and Cate

While Defendants argue that the complaint fails to allege that any defendant personally participated in any act or failure to act that harmed Plaintiffs, "[t]he law clearly allows actions against supervisors under section 1983 as long as a sufficient causal connection is present and the plaintiff was deprived under color of law of a federally secured right."  Starr, 652 F.3d at 1207 (quoting Redman v. Cnty. of San Diego, 942 F.2d 1435, 1447 (9th Cir.1991)).  The Court shall address below whether Plaintiffs have set forth sufficient allegations to link Defendants Schwarzenegger, Yates, and Cate to the violations alleged.

**B.**    **Eight Amendment**

To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison conditions must involve "the wanton and unnecessary infliction of pain."  Rhodes v. Chapman, 452 U.S. 337, 347 (1981).  A prisoner's claim does not rise to the level of an Eighth Amendment violation unless (1) "the prison official deprived the prisoner of the 'minimal civilized measure of life's necessities,' " and (2) "the prison official 'acted with deliberate indifference in doing so.' " Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002) (citation omitted)).

    1.      Conditions of Confinement

Plaintiffs allege that they have been subjected to cruel and unusual punishment by the policies and procedures allowing them to be housed in a hyper-endemic region and they subsequently contracted Valley Fever.  The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement.  Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing Farmer v. Brennan, 511 U.S. 825, 847, 114 S.Ct. 1970 (1994) and Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392 (1981)) (quotation marks omitted).  While conditions of confinement may be, and often are, restrictive and harsh, they must not involve the

wanton and unnecessary infliction of pain.  Morgan, 465 F.3d at 1045 (citing Rhodes, 452 U.S. at 347) (quotation marks omitted).  Thus, conditions which are devoid of legitimate penological purpose or contrary to evolving standards of decency that mark the progress of a maturing society violate the Eighth Amendment.   Morgan, 465 F.3d at 1045 (quotation marks and citations omitted); Hope v. Pelzer, 536 U.S. 730, 737 (2002); Rhodes, 452 U.S. at 346.  In order to state a claim for violation of the Eighth Amendment, the plaintiff must allege facts sufficient to support a claim that prison officials knew of and disregarded a substantial risk of serious harm to the plaintiff.  E.g., Farmer v. Brennan, 511 U.S. 825, 847 (1994); Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

The Court shall first address the substantial risk of harm prong of the deliberate indifference analysis.

**a.      Substantial Risk of Harm**

Defendants argue that no court has held that exposure to Valley Fever, in and of itself, presents a substantial risk to an inmate's health.  The Court agrees that merely being exposed to an area, even a hyper-endemic area, by itself does not constitute an excessive risk of harm.  See Sullivan v. Kramer, No. 1:13-cv-00275-DLB-PC, 2014 WL 1664983, at *5 (E.D. Cal. April 23, 2014) (being confined in an area where Valley Fever spores exist is insufficient to state a claim for deliberate indifference); Lua v. Smith, No. 1:14-cv-00019-LJO-MJS, 2014 WL 1308605, at *2 (E.D. Cal. Mar. 31, 2014) (first prong of deliberate indifference claim satisfied where plaintiff identifies a factor responsible for increasing the risk of contraction or severity of infection); Willis v. Yates, No. 1:08-cv-00125-0WW-SMS PC, 2009 WL 3486674, at *3 (E.D. Cal. Oct. 23, 2009) (risk of contracting Valley Fever by being housed at PVSP and fact that inmate contracted Valley Fever insufficient to state a claim).   As Plaintiffs' allege in their complaint, most individuals who contract Valley Fever get a mild form of the disease with moderate to mild flu-like symptoms or no symptoms at all.  (ECF No. 14 at ¶ 5.)  Sixty percent of individuals experience no symptoms and most of the remaining forty percent only have mild flu-like symptoms.  (Id. at ¶ 44, 45.)  Therefore, to the extent that Plaintiffs attempt to state a claim based on mere placement at a prison in an area that results in Valley Fever, the complaint fails to state a

claim.

However, the complaint alleges sufficient facts to allege that African-Americans, Filipinos and other Asians, Hispanics, and American Indians, as well as individuals with compromised immune systems, were at a substantial risk of developing disseminated infection which causes life threating pneumonia or blood-borne spread of the fungus to other parts of the body and can be fatal.[4]   The Court finds that the complaint is sufficient to allege that individuals within these categories were at a substantial risk of harm due to their increased risk of developing disseminated infection.

### b.      Deliberate Indifference

Plaintiffs have set forth numerous publications by the CDCR and related public entities which were provided to Defendants Schwarzenegger, Yates and Cate in this action placing them on notice that certain individuals were at a significant risk of contracting Valley Fever and having it develop into the disseminated form of the disease by virtue of their race, national origin, or because they had a compromised immune system.  This is sufficient to show that these defendants knew that African-Americans, Filipinos and other Asians, Hispanics, and American Indians, as well as those who are immune-compromised or immune-suppressed were at a significantly increased risk of contracting the disseminated form of Valley Fever.

Armed with such knowledge, Plaintiffs contend that Defendants Schwarzenegger, Yates and Cate failed to adopt a policy of excluding these high risk inmates from being housed in the hyper-endemic area or moving high risk inmates out of the hyper-endemic area.  Defendants argue that the complaint fails to allege that the defendants personally caused the injury to Plaintiffs and cannot state a claim for deliberate indifference because the defendants were unaware of the details of the plaintiffs' incarceration, medical conditions or increased risk of Valley Fever.  However, "when a supervisory official advances or manages a policy that instructs its adherents to violate constitutional rights, then the official specifically intends for such

---

[4] Although Plaintiffs allege that inmates over the age of fifty five are also at an increased risk of developing disseminated disease (ECF No. 14 at ¶ 93), it was not until April 11, 2013, that there is any indication that CDCR staff had any knowledge of a risk to inmates over 55 years old, (ECF No. 14 at ¶ 190).

1  violations to occur.  Claims against such supervisory officials, therefore, do not fail on the state of

2  mind requirement, be it intent, knowledge, or deliberate indifference."  OSU Student Alliance v.

3  Ray, 699 F.3d 1053, 1076 (9th Cir. 2012).

4       i.      Defendant Schwarzenegger

5       Specifically, Plaintiffs contend that Defendant Schwarzenegger was aware of the risk to

6  these inmates housed at PVSP as early as 2005 when a prisoner rights group sent him an

7  informational packet describing the threat posed to these high risk inmates by Valley Fever.

8  (ECF No. 14 at ¶ 102.)   Yet, despite this knowledge, Plaintiffs allege that in 2007 Defendant

9  Schwarzenegger proposed that new dormitories be constructed at PVSP increasing the number of

10 prisoners that could be housed there by 600.  (Id. at ¶ 103.)  Plaintiffs state that Defendant

11 Schwarzenegger indicated he was not concerned about the incidence of Valley Fever and that

12 they would go ahead and build when questioned during a press conference.  (Id. at ¶ 104.)

13 Plaintiffs also contend that in 2011, Defendant Schwarzenegger announced that housing prison

14 inmates at PVSP would continue unabated.  (Id. at ¶ 84.)

15      While Plaintiffs' amended complaint demonstrates that Defendant Schwarzenegger was or

16 should have been aware of the threat to high risk inmates, the allegations in the complaint fail to

17 show that he had any personal involvement in the policies that allowed such high risk inmates to

18 be housed at PVSP or ASP.  Plaintiffs' contend that Defendant Schwarzenegger "condoned

19 subordinates' actions", however, there are no allegations in the complaint that Defendant

20 Schwarzenegger was aware of the specific inmates that were being housed at these prisons or was

21 responsible for promulgating the policies.

22      Defendant Schwarzenegger is not liable for the policies of the CDCR where he did not

23 participate in or direct the violations, nor knew of the violations and failed to act to prevent them.

24 Taylor, 880 F.2d at 1045.  To the extent that Plaintiffs attempt to state a claim based solely upon

25 the decision to house inmates in the endemic area, the amended complaint fails to state a claim.

26 As the Court previously discussed, building a prison in the hyper-endemic area does not create a

27 substantial risk of harm.

28      Plaintiffs contend that statements made by Defendant Schwarzenegger during press

1    conferences exhibit deliberate indifference to their substantial risk of harm.   However, the

2    statements made by Defendant Schwarzenegger merely show that he was aware that there was

3    generally a risk of Valley Fever.   Defendant Schwarzenegger's alleged comments during press

4    conferences do not show that Defendant Schwarzenegger was aware that high risk inmates were

5    being housed at Corcoran, PVSP, or CCI and thereby exposed to a substantial risk of serious

6    harm.  .   The fact that Defendant Schwarzenegger made comments showing that he was aware of

7    the risk of Valley Fever alone is not sufficient to state a claim that Defendant Schwarzenegger

8    was deliberately indifferent to the risk to Plaintiffs in this action.   The Court recommends that the

9    motion to dismiss Defendant Schwarzenegger be granted.

10          ii.      Defendants Cate and Yates

11    Plaintiffs allege that in 2007 the Fresno Grand Jury investigation informed Defendants

12    Cate, and Yates of the incidence of Valley Fever at PVSP and the increased risk to African-

13    Americans, Hispanics, and Filipinos and other Asians.  (Id. at ¶¶ 98-101.)  Plaintiffs contend that

14    although Defendants were aware that housing these inmates in the hyper-endemic prisons posed a

15    greatly elevated risk of them contracting the disseminated disease, Defendant Cate created and

16    continued policies that allowed inmates to be transferred into the high risk area and did not

17    protect high risk prisoner groups; and Defendant Yates established and implemented a policy that

18    allowed them to be housed in the endemic area.

19    The allegations contained in the first amended complaint are sufficient to state a claim

20    against Defendants Cate and Yates for deliberate indifference to conditions of confinement by

21    allowing these high risk categories of inmates to be housed at prisons in the endemic and hyper-

22    endemic area.  The Court recommends that Defendants' motion to dismiss Defendants Cate and

23    Yates be denied.[5]

24          iii.      Defendant Winslow

25    Plaintiffs contend that Defendant Winslow was the former Statewide Medical Director for

26

---

27    [5] While Defendants argue that they have taken, and continue to take in good faith, efforts to protect inmates based
      upon the evolving recommendations regarding Valley Fever, at the motion to dismiss stage the allegations in the
28    complaint are taken as true.

1   CDCR and authored a memo in June 2007 disclosing that CDCR was aware of the greatly

2   increased risk of infection in the hyper-endemic areas and that the risk was multiplied several

3   times over for certain ethnic groups.  (Id. at ¶ 27.)  Defendant Winslow made recommendations

4   that were ignored in his policy recommendations issued five months later.  (Id.)

5          While Plaintiffs allege that Defendant Winslow personally participated in CDCR's

6   adoption of policies that allowed high risk inmates to continue to be transferred to these prisons,

7   there are no facts alleged in the amended complaint to support such a conclusory allegation.

8   Plaintiffs have not alleged any facts to show that Defendant Winslow was personally involved in

9   adopting or implementing the policies which are being challenged in this action.

10         Further, Plaintiffs contend that Dr. Winslow issued a memorandum in November 2007

11  that did not include recommend excluding all African-American, Hispanic, Filipino and other

12  Asian inmates.  However, in June 2007 Defendant Winslow issued a memorandum making

13  recommendations to reduce the infection rate inside the prison.  Deliberate indifference occurs

14  where the official fails to address a substantial risk of harm to the inmates.  Simmons v. Navajo

15  County, Arizona, 609 F.3d 1011, 1018 (9th Cir. 2010).  In this instance, based on the allegations

16  in Plaintiffs' complaint, Defendant Winslow was not deliberately indifferent to the risk, but made

17  recommendations to reduce the incidence of infection rates at the prison.  The Court recommends

18  that Defendants' motion to dismiss Defendant Winslow be granted.

19         iv.     Defendant Igbinosa

20         Plaintiffs allege that Defendant Igbinosa was the medical director at PVSP during the time

21  period relevant to this complaint.  (Id. at ¶ 32.)  Plaintiffs contend that despite being aware of the

22  incident rate of the disease, he failed to establish a prison level policy of screening inmates to

23  enable them to be transferred away from the hyper-endemic prison.  (Id.)

24         While Plaintiffs contend that Defendant Igbinosa failed to establish a screening policy to

25  identify high risk inmates, given the CDCR policy that existed at the time, instituting a policy to

26  screen inmates would not have resulted in Plaintiffs being transferred from PVSP.  Plaintiffs'

27  complaint fails to allege any facts from which the Court may infer that Defendant Igbinosa was

28  responsible for the policy of housing high risk inmates at PVSP or had any authority, by virtue of

1    his position as medical director at the prison, to have inmates transferred to another prison due to

2    being at high risk of contracting disseminated disease.

3         Further, Plaintiffs' conclusory statement that Defendant Igbinosa was aware of the

4    incidence rate of Valley Fever and medical risks and failed to take actions to address the epidemic

5    or reduce inmates expose to disease fails to show state a plausible claim that Defendant Igbinosa

6    failed to respond to a serious medical need.   Plaintiffs' complaint specifically alleges that

7    Plaintiffs should not have been transferred to PVSP or should have been transferred from PVSP.

8    As discussed, the complaint fails to show that Defendant Igbinosa was responsible for transfer

9    decisions or the CDCR policy.  Plaintiffs fail to include any allegations that Defendant Igbinosa

10   had the ability to protect Plaintiffs from expose to Valley Fever and failed to do so.

11        Plaintiffs fail to state a cognizable claim and the Court recommends that Defendants'

12   motion to dismiss Defendant Igbinosa be granted.

13        2.        Deliberate Indifference to Serious Medical Needs

14        Plaintiffs also contend that Defendants were deliberately indifferent to their serious

15   medical needs by transferring them to an area where they were exposed to Valley Fever.   In the

16   context of deliberate indifference to medical needs, deliberate indifference is shown where the

17   official is aware of a serious medical need and fails to adequately respond.  Simmons, 609 F.3d at

18   1018.  Plaintiffs allegation that exposure to Valley Fever was deliberate indifference to a medical

19   condition fails to state a claim.

20        Deliberate indifference may be manifested "when prison officials deny, delay or

21   intentionally interfere with medical treatment," or in the manner "in which prison physicians

22   provide medical care."  McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on

23   other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).

24   Plaintiffs allege that due to their risk factors, by exposing them to Valley Fever a serious medical

25   condition could and did occur.  The complaint does not allege that at the time the inmates were

26   transferred to the subject prison they had a serious medical and any named defendant failed to

27   respond.

28        In the opposition to the motion, Plaintiffs argue that they did not receive appropriate care

for their Valley Fever; however these allegations are not set forth in the complaint.  While some plaintiffs do allege a period of time passed between their symptoms beginning and being formally diagnosed and treated, Plaintiffs have not linked this delay to any defendant named in this action. Nor have Plaintiffs linked any named defendant to any complications that they suffered due to any alleged treatment received while incarcerated.  As alleged in the complaint, Plaintiffs' claim is deliberate indifference to conditions of confinement.  Plaintiffs fail to state a deliberate indifference to serious medical needs claim and the motion to dismiss this claim should be granted.

### C.    Ripeness

Defendants contend that since Plaintiffs Garner, Roberts, and Smith are still in custody their claim for the cost of on-going medical care is not ripe.  Plaintiffs counter that their claims are ripe as they have contracted Valley Fever and therefore have demonstrated present injury and pleading general damages, including future medical costs, is legally proper at this phase of the litigation.

For each form of relief sought in federal court, Plaintiff must establish standing.  Mayfield v. United States, 599 F.3d 964, 969 (9th Cir. 2010), cert.denied, 131 S. Ct. 503 (2010).  This requires the plaintiff to "show that he is under threat of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to challenged conduct of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury."  Summers v. Earth Island Institute, 129 S. Ct. 1142, 1149 (2009) (citation omitted); Mayfield, 599 F.3d at 969 (citation omitted). "The constitutional component of ripeness overlaps with the 'injury in fact' analysis for Article III standing.  Whether framed as an issue of standing or ripeness, the inquiry is largely the same: whether the issues presented are 'definite and concrete, not hypothetical or abstract.' "  Wolfson v. Brammer, 616 F.3d 1045, 1058 (9th Cir. 2010) (internal citations omitted).

Defendants rely on Hassel v. Sisto, No. 2:10-cv-0191-GEB-CMK, 2011 WL 2946370 (E.D. Cal. July 21, 2011), to argue that certain plaintiffs in this action cannot pursue claims for future medical care because they are still in the custody of CDCR.  In Hassel the inmates alleged

they had contracted tuberculosis ("TB") as a result of prison officials deliberate indifference and were seeking future medical damages.  Id. at *1.  However, none of the plaintiffs had active TB.  Id.  The defendants filed a motion to dismiss arguing that there was no case or controversy ripe for adjudication as none of plaintiffs had active TB and any future damage was too speculative.  Id. at *2-3.  The court found that any future damage was too speculative to bring to court.  The reasons given by the court were that the costs of future healthcare would not be compensable until after the plaintiffs were released from prison; they would have to develop TB and show that it was attributable to a relapse of their treatment in prison; and there was no imminent danger of them developing active TB since they had been effectively treated in prison.  Id. at *3.

This case is distinguishable from Hassel as all Plaintiffs contend they are currently suffering symptoms of Valley Fever.  Therefore, they have an actual injury that can be addressed by a favorable judicial decision.  While Defendants contend that the date that Plaintiffs will be released from custody is speculative, there are no facts before the court to determine that such a date could not be determined should this action proceed to trial.  Defendants' motion to dismiss the claims for future medical damages on the grounds of ripeness should be denied.

**D.     State Tort Claim**

In the first amended complaint, Plaintiffs contend that Defendants waived all defenses based on presentation of claims to the Victims Compensation Board due to failing to comply with the statutory notice requirements under California Government Code section 53501.  Defendants move to dismiss the state law claims on the ground that Plaintiffs did not comply with the Government Claims Act and Plaintiffs are not excused from presenting their claim prior to bringing suit.

The California Tort Claims Act[6] requires that a tort claim against a public entity or its employees be presented to the California Victim Compensation and Government Claims Board, formerly known as the State Board of Control, no more than six months after the cause of action

---

[6] The Court recognizes that in City of Stockton v. Superior Court, 42 Cal.4th 730, 742 (Cal. 2007), California's Supreme Court adopted the practice of referring to California's Tort Claims Act as the Government Claims Act. However, given that the federal government has also enacted a Tort Claims Act, 28 U.S.C. § 2671, the Court here refers to the Government Claims Act as the California Tort Claims Act in an effort to avoid confusion.

accrues.  Cal. Gov't Code §§ 905.2, 910, 911.2, 945.4, 950-950.2.  Presentation of a written claim, and action on or rejection of the claim are conditions precedent to suit.  State v. Superior Court of Kings County (Bodde), 90 P.3d 116, 119 (Cal. 2004); Shirk v. Vista Unified School District, 42 Cal.4th 201, 209 (2007).  To state a tort claim against a public employee, a plaintiff must allege compliance with the California Tort Claims Act.  Cal. Gov't Code § 950.6; Bodde, 90 P.3d at 123.  "[F]ailure to allege facts demonstrating or excusing compliance with the requirement subjects a complaint to general demurrer for failure to state a cause of action."  Bodde, 90 P.3d at 120.

Plaintiffs contend that Defendants waived the presentation requirement by not complying with California Government Code section 53501 which requires that each public agency must file with the Secretary of State a form which includes:

> 1. The full, legal name of the public agency.
> 2. The official mailing address of the governing body of the public agency.
> 3. The name and residence or business address of each member of the governing body of the public agency.
> 4. The name, title, and residence or business address of the chairman, president, or other presiding officer, and clerk or secretary of the governing body of such public agency.

Cal. Gov. Code § 53051(a).  Section 946.4, as relevant here, provides that the failure to present a claim does not bar a suit if "[a] statement or amended statement pertaining to the public agency is on file, or is placed on file . . . but the information contained therein is so inaccurate or incomplete that it does not substantially conform to the requirements of Section 53051."  A public agency is described as "a district, public authority, public agency, and any other political subdivision or public corporation in the state, but does not include the state or a county, city and county, or city."  Cal. Gov. Code § 53050.

"[S]ection 53051 was enacted 'to provide a means for identifying public agencies and the names and addresses of designated officers needed to enable or assist a person to comply with any applicable claims procedure[.]' "  Wilson v. San Francisco Redevelopment Agency, 19 Cal.3d 555, 561 (1977).  An "agency's failure to comply with section 53051 entitles the claimant to ignore the claim-filing requirement entirely."  Id.

In their opposition, Plaintiffs contend that, at the pleading stage, the Court should not

27

1    decide the issue of substantial compliance.  However, the Court disagrees for several reasons.

2    Initially, Plaintiffs argue that the failure to comply with the California Tort Claims Act is an

3    affirmative defense.  However, to state a claim a plaintiff must allege compliance with the Act

4    and it is therefore an element of the state law cause of action.  Young v. City of Visalia, 687

5    F.Supp.2d 1141, 1152 (E.D. Cal. 2009).  Therefore, failure to comply with the California Tort

6    Claim Act is fatal to Plaintiffs' cause of action.  Hacienda La Puente Unified School Dist. of Los

7    Angeles v. Honig, 976 F.2d 487, 495 (9th Cir. 1992).  Also, the issue of whether Defendants

8    substantially conform with the requirements of the statute is not a factual issue, but is a legal

9    issue.  Finally, as the Ninth Circuit recently reiterated, issues dealing with exhaustion

10   requirements, if feasible, should be decided before reaching the merits of a prisoner's claim.

11   Albino v. Baca, 767 F.3d 1162, 1169 (E.D. Cal. 2014).

12        The California Tort Claim Act defines the State as "the State and any office, officer,

13   department, division, bureau, board, commission or agency of the State claims against which are

14   paid by warrants drawn by the Controller."  Cal. Gov. Code §§ 900.6, 940.6.  If the CDCR claims

15   are paid by warrants drawn by the Controller, it would be considered the State for the purposes of

16   the California Tort Claims Act and is not required to comply with section 53050.  See Galli v.

17   State of California, 98 Cal.App.3d 662, 675 (1979).

18        Further, the Court takes judicial notice of the California Roster of State Agencies,

19   Departments, Boards, and Commissions provided by Defendants in their request for judicial

20   notice.[7]  (ECF No. 38-1 at 2.)  The information provided in the Roster for the CDCR includes the

21   address, phone number and website address for the CDCR.  (Id.)  The website address provided is

22   for the CDCR website which provides the identity of the Secretary of the CDCR and information

23   on each of the divisions and boards within the CDCR.[8]

24   _____

25   [7] As a general rule, the court may not consider any material outside the pleadings in ruling on a Rule 12(b)(6) motion.
     United States v. Corinthian Colleges, 655 F.3d 984, 998 (9th Cir. 2011).  However, the incorporation by reference
26   doctrine allows material that is attached to the complaint to be considered, as well as "unattached evidence on which
     the complaint 'necessarily relies' if : (1) the complaint refers to the document; (2) the document is central to
27   plaintiff's claim; and (3) no party questions the authenticity of the document."  Corinthian Colleges, 655 F3d at 999.

28   [8] Plaintiffs object to the request that the Court take judicial notice of the CDCR website citing Knievel v. ESPN, 393
     F.3d 1068, 1076 (9th Cir. 2005).  While Plaintiffs cite to footnote 13, there is no footnote 13 in the opinion.
     However, at the page cited the court did take into account the web pages attached to the motion to dismiss under the

1    An unpublished California case, <u>Kahaunaele v. Tri-City Medical Center</u>, No. D053214,

2 2009 WL 2004428, at *6 (July 10, 2009), recognizes the sparseness of the law addressing what

3 defines substantial conformity with the requirements of section 53051.  <u>Kahaunaele</u> applied the

4 law of substantial compliance to determine the issue.  <u>Id.</u> at *7.

5    "Substantial compliance . . . means actual compliance in respect to the substance essential

6 to every reasonable objective of the statute." <u>Costa v. Superior Court</u>, 34 Cal.4th 986, 1017 n.24

7 (2006) (citations omitted).  This means that each objective of the statute must be achieved in

8 order to satisfy the substantial compliance standard, but it does not require actual compliance with

9 every specific statutory requirement.  <u>Id.</u>  In determining whether there has been substantial

10 compliance, "t[]he paramount consideration is the objective of the statute." <u>North Pacifica LLC</u>

11 <u>v. California Costal Com'n</u>, 166 Cal.App.4th 1416, 1431 (2008).

12    The purpose of section 53051 is "to provide a means for identifying public agencies and

13 the names and addresses of designated officers needed to enable or assist a person to comply with

14 any applicable claims procedure." <u>Tubbs v. Southern California Rapid Transit Dist.</u>, 67 Cal.2d

15 671, 676 (1967).  The information provided on the Roster is sufficient to enable or assist an

16 individual to comply with any applicable claims procedure.  While Plaintiffs argue that the

17 information is incomplete as found in <u>Banfield v. Sierra View Hospital</u>, 124 Cal.App.3d 444

18 (1981), in <u>Banfield</u> the information on the roster was incorrect and not substantially compliant

19 because the hospitals had failed to file updated information with the Roster of Public Agencies.

20 <u>Id.</u> at 456.  Here, there is no argument that the information provided on the Roster was incorrect.

21    Plaintiffs' contend that the failure to name the secretary and each member of the

22 governing board did not substantially comply with section 53051.  However, the information

23

24 "incorporation by reference" doctrine.  <u>Id.</u>  Further, courts may take judicial notice of "a fact that is not subject to

25 reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).  Courts may take judicial notice of information displayed on government websites where neither party disputes the accuracy of the information contained therein. <u>Daniels –Hall</u>

26 <u>v. National Educ. Ass'n</u>, 629 F.3d 992, 998-99 (9th Cir. 2010).  The Court overrules Plaintiffs' objections to the Court taking judicial notice of the CDCR website.  However, the Court will not take judicial notice of Defendants'

27 exhibits C-G which contain the claim forms allegedly filed by Plaintiffs in this action.  The complaint did not necessarily rely on these documents and the Court will not consider material beyond the complaint which is not

28 incorporated by reference in determining a motion to dismiss.

1   provided on the roster includes the website for the CDCR which provides the current information

2   regarding the contact information for each department or division of the CDCR.  Plaintiffs are

3   excused from presenting a claim only where the information provided by the agency "is so

4   inaccurate or incomplete that it does not substantially conform to the requirements of Section

5   53051."   Cal. Gov. Code § 946.4.   The Court finds that the information on the Roster

6   substantially complies with the purpose of section 53051 as it provides a means to identify the

7   officers so that Plaintiffs could comply with the claims procedure.  See Media Services, Inc. v.

8   Mehas, 50 Fed.Appx. 850, 1 (9th Cir. 2002) (unpublished) (finding alleged error of failure to list

9   secretary or clerk insubstantial in complying with section 53051).

10   Defendants' motion to dismiss the state law claims for failure to file a claim in compliance

11   with the California Tort Claim Act should be granted.

12   **E.      Misjoinder of Parties**

13   Defendants move to sever the claims against the individual defendants contending that the

14   parties are misjoined in this action.  Plaintiffs counter that they are alleging that Defendants'

15   policies and systemic pattern of inaction exposed them to a greater risk of contracting Valley

16   Fever and they share common questions of law and fact making joinder of the parties and claims

17   proper.

18   Rule 20 of the Federal Rules of Civil Procedure provides for joinder of parties in a single

19   action where any right to relief is asserted by them or against them "jointly, severally, or in the

20   alternative with respect to or arising out of the same transaction, occurrence, or series of

21   transactions or occurrences; and any question of law or fact common to all plaintiffs [or

22   defendants] will arise in the action.  Fed. R. Civ. P. 20(a)

23   The complaint in this action arises out of the policy of housing high risk inmates in the

24   endemic area which was allegedly promulgated and implemented by the defendants in this action.

25   While the defendants argue that the injuries do not arise out of the same transaction or

26   occurrence, the Court disagrees.  Plaintiffs are all alleging to have been harmed by the same

27   policy.  Similarly the claims by all these Plaintiffs will share common questions of law and fact.

28   Joinder is appropriate under Rule 20.  While the Court agrees with Defendants that the issue of

1  joinder for all purposes may need to be readdressed at a later stage of the proceedings,

2  Defendants' motion to dismiss for improper joinder at the pleading stage should be denied.

3  **F.    Rule 8**

4  Finally, Defendants move to dismiss the complaint claiming it violates Rule 8 of the

5  Federal Rule of Civil Procedure.  Plaintiffs oppose the motion on the ground that the complaint is

6  appropriately detailed and is organized to allow Defendants to understand the Constitutional

7  violations alleged.

8  While Defendants cite cases in which a complaint has been dismissed for being "prolix"

9  with evidentiary detail, the Court does not find Plaintiffs' complaint to violate Rule 8.  The Ninth

10  Circuit has held that a complaint may be dismissed where the allegations are such that the court

11  has difficulty determining the circumstances that gave rise to the cause of action.  Gottschalk v.

12  City and County of San Francisco, 964 F.Supp.2d 1147, 1154 (N.D. Cal. 2013)  "Rule 8(a) has

13  'been held to be violated by a pleading that was needlessly long, or a complaint that was highly

14  repetitious, or confused, or consisted of incomprehensible rambling.' "  Cafasso, U.S. ex rel. v.

15  General Dynamics C4 Systems, Inc., 637 F.3d 1047, 1059 (9th Cir. 2011) (quoting 5 Charles A.

16  Wright & Arthur R. Miller, Federal Practice & Procedure § 1217 (3d ed.2010)).

17  While the amended complaint is seventy pages long, it asserts claims for six plaintiffs

18  against thirteen defendants.   Although the complaint does contain some unnecessary and

19  repetitive detail, it is not so repetitious or confusing as to make it incomprehensible.   The

20  complaint is logically organized, divided into sections for parties, factual allegations, Plaintiffs

21  theories of liability, and causes of action.  The complaint here clearly delineates the claims being

22  brought and the defendants against whom the claims are being made.  The complaint is this action

23  is distinguishable from those cases in which courts have dismissed the complaint for violating

24  Rule 8.  See Cafasso, 637 F.3d at 1059 (affirming denial of motion to amend where complaint

25  contained 733 pages); Gottschalk, 964 F.Supp.2d at 1155 (dismissing complaint that was

26  rambling, confusing, and unintelligible).

27  Further, while Defendants contend that Plaintiffs use terms such as high-risk or at-risk

28  without defining the terms, the complaint makes it clear that certain racial groups, such as

African-Americans, Filipinos and other Asians, Hispanics, and American Indians, as well as those who are immune compromised are those at high risk for developing disseminated disease. Although Defendants contend that Plaintiffs fail to identity if they fall within these categories, each Plaintiff alleges which group he belongs to.  Plaintiffs Barnett, Dallas, Garner, Roberts, and Smith identify themselves as African-American.  Plaintiff Romo identifies himself as Hispanic. Additionally, Plaintiffs Barnett, Roberts, and Smith allege they suffered from respiratory problems that placed them at high risk of contracting Valley Fever prior to being transferred into PVSP.

Defendants also argue that Plaintiffs have failed to define certain terms such as hyper-endemic regions or prisons.  However, the complaint identifies the prisons in the endemic and hyper-endemic regions as ASP, California Correctional Institution, California State Prison-Corcoran, Wasco State Prison, North Kern State Prison, PVSP, California Substance Abuse Treatment Facility and State Prison at Corcoran, and Kern Valley State Prison.  (ECF No. 14 at ¶ 55.)

The Court finds that the complaint does not violate Rule 8 and recommends that Defendants' motion to dismiss the complaint for violating Rule 8 be denied.

## V.

## CONCLUSION AND RECOMMENDATION

Based on the foregoing, IT IS HEREBY RECOMMENDED that:

1.      Defendants Winslow and Igbinosa's motion to dismiss be GRANTED;

2.      Defendants Beard, Brazelton, Brown, Cate, Hartley, Hubbard, Rothchild, Schwarzenegger, and Yates motion to dismiss be DENIED IN PART AND GRANTED IN PART as follows:

a.      The motion to dismiss Defendants Brown, Schwarzenegger, Beard, Brazelton, Hubbard, Rothchild, Hysen, and Hartley be GRANTED;

b.      The motion to dismiss Defendants Cate and Yates be DENIED;

c.      Defendants' motion to dismiss the claim of deliberate indifference to conditions of confinement in violation of the Eighth Amendment be DENIED;

d.      Defendants' motion to dismiss the claim of deliberate indifference to serious medical needs in violation of the Eighth Amendment be GRANTED;

e.      Defendants' motion to dismiss the state law claims for failure to allege compliance with the Tort Claim Act be GRANTED;

f.      Defendants' motion to dismiss Plaintiff's complaint on all other grounds be DENIED; and

3.      Plaintiffs should be granted an opportunity to file an amended complaint to cure the deficiencies identified in this findings and recommendations;[9] and

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within fourteen (14) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   __June 24, 2014__

_____
UNITED STATES MAGISTRATE JUDGE

---

[9] Plaintiffs are not being granted an opportunity to file an amended complaint at this time.  Once the district judge issues an order on the findings and recommendations, Plaintiffs shall be provided with the date by which to file an amended complaint.

33