1

2

3

4

**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

5

6

7

8

9

10

11

12

13

14

| | |
|---|---|
| **COREY LAMAR SMITH, et al.,**<br><br>                    **Plaintiffs,**<br><br>           **v.**<br><br>**ARNOLD SCHWARZENEGGER, et al.,**<br><br>                    **Defendants.** | **LEAD CASE NO.: 1:14-cv-60-LJO-SAB**<br><br>**MEMBER CASE NOS.:**<br>**1:13-cv-1618-AWI-SKO**<br>**1:13-cv-1822-AWI-GSA**<br>**1:14-cv-369-MJS**<br>**1:14-cv-430-LJO-SAB**<br>**1:14-cv-816-LJO-SAB**<br>**1:14-cv-1074-LJO-GSA**<br>**1:14-cv-1226-LJO-SAB**<br>**1:14-cv-1395-LJO-SAB**<br>**1:14-cv-1559-LJO-SAB**<br>**1:14-cv-1697-LJO-DLB**<br><br>**MEMORANDUM DECISION AND ORDER RE FINDINGS AND RECOMMENDATIONS (Doc. 164) RE DEFENDANTS' MOTIONS TO DISMISS (Docs. 138, 140)** |

15

16

## I. <u>INTRODUCTION</u>

17

18

19

20

21

22

23

Coccidioidomycosis, commonly known as "Valley Fever," is an infection caused by inhaling the spores of the fungus Coccidioides, which is endemic to the soil throughout the southwestern United States, and is particularly prevalent in California's San Joaquin Valley.[1] Valley Fever infections generally cause mild flu-like symptoms (or no symptoms at all), but the "disseminated" form of the disease, which occurs when the infection disseminates beyond the lungs and into other parts of the body, can cause serious, life-long health complications, and even death. Some groups of individuals, including certain ethnic groups, individuals over the age of 55, and individuals with compromised immune

24

25

------

[1] Valley Fever and the spores that cause it often are referred to interchangeably as "cocci."

1

1   systems, are particularly susceptible of developing disseminated Valley Fever.

2        This consolidated action is one of many civil rights cases currently pending in this district

3   brought under 42 U.S.C. § 1983 ("§ 1983") by current and former inmates who contracted Valley Fever

4   while incarcerated at prisons located in the San Joaquin Valley, where cocci naturally exist. Plaintiffs,

5   159 current and former inmates who contracted Valley Fever while incarcerated in San Joaquin Valley

6   prisons, bring this class action against Defendants, various California prison officials, for (1) violation of

7   the Eighth Amendment and (2) negligence. *See* Doc. 113, Consolidated Amended Complaint ("CAC"),

8   at 2. Plaintiffs' claims are premised on their assertion that Defendants' intentional actions and inaction

9   unconstitutionally and negligently exposed them to an unreasonable risk of contracting Valley Fever

10  and, ultimately, caused them to contract the disease.

11       Currently pending before the Court is Defendants' motion to dismiss Plaintiffs' Consolidated

12  Amended Complaint ("CAC") in its entirety. Doc. 138. The Magistrate Judge issued Findings and

13  Recommendations ("F&Rs"), Doc. 164, to which the parties filed objections and responses. Docs. 175,

14  177-79. The Magistrate Judge recommends dismissing Plaintiffs' Eighth Amendment claim without

15  leave to amend on the ground Defendants are entitled to qualified immunity from the claim. Doc. 164 at

16  36. Because that claim is the only basis for federal court jurisdiction, the Magistrate Judge further

17  recommends declining to extend supplemental jurisdiction over Plaintiffs' negligence claim and

18  dismissing it without leave to amend. *Id.*

19       In addition, after the F&Rs issued and Plaintiffs filed their objections to them, Plaintiffs filed a

20  motion to amend the CAC to add an additional defendant (Doc. 182), and the parties filed a stipulation

21  concerning Plaintiffs' naming another defendant in the CAC (Doc. 183), both of which were stayed by

22  the Magistrate Judge pending the Court's consideration of the F&Rs. Doc. 184 at 2. The Magistrate

23  Judge reasoned that any amendment would be futile if the Court adopted the F&Rs. *Id.*

24       Pursuant to 28 U.S.C. § 636(b)(1)(C), the Court has conducted a de novo review of the F&Rs

25  and the relevant record. *See Wang v. Masaitis*, 416 F.3d 992, 1000 n.13 (9th Cir. 2005); Fed. R. Civ. P.

1  72(b)(3). For the following reasons, the Court ADOPTS the Magistrate Judge's recommendations to

2  dismiss without leave to amend Plaintiffs' Eighth Amendment claim and to decline supplemental

3  jurisdiction over their negligence claim.

4  ## II. FACTUAL AND PROCEDURAL BACKGROUND[2]

5  Plaintiffs' 276-page CAC names as Defendants former California Governor Arnold

6  Schwarzenegger, 13 various California prison officials, and Doe Defendants 1-50.[3] CAC at 6-7.

7  Plaintiffs bring claims against Defendants for (1) violation of their Eighth Amendment rights and (2)

8  negligence under California state law.[4] The crux of Plaintiffs' claims is that Defendants' acts and

9  omissions recklessly "caused the Plaintiffs to contract Valley Fever, a lifelong crippling disease." *Id.* at

10 ¶¶ 1, 9. Specifically, Plaintiffs allege Defendants knew that housing inmates, like Plaintiffs, in prisons

11 where Valley Fever was known to be hyper-endemic[5] while failing to implement remedial and

12 preventative measures[6] to reduce inmate exposure to cocci "posed an unacceptable risk of irreparable

13 harm." *Id.* at ¶¶ 10, 12, 52. In addition, Defendants allowed "major construction" at the prisons, which

14 churned the soil and released cocci into the air. *Id.* at ¶ 15. Plaintiffs' allegations are informed by, among

15 other things:

16 _____

17 [2] The Court has considered the entire record, but will discuss only the aspects of it necessary to resolve Defendants' motions to dismiss. The Court incorporates by reference the factual and procedural background outlined in the F&Rs. Doc. 164 at 2-3, 4-11.

18 [3] The CAC named J. Clark Kelso as a Defendant, but Plaintiffs voluntarily dismissed him. Doc. 135.

19 [4] The individual Plaintiffs do not bring identical claims. First, some Plaintiffs bring both Eighth Amendment and negligence
20 claims, whereas other Plaintiffs only bring one of those claims. *See, e.g.*, CAC at ¶¶ 2269 (Plaintiff Abukar Abdulle brings both a federal and a state claim), 2271 (Plaintiff Richard Adams brings only a federal claim). Further, the individual claims are not brought against all Defendants because certain Defendants were involved only at prisons where certain Plaintiffs were
21 not housed. For instance, Defendant Brazelton was involved with only Pleasant Valley State Prison ("PVSP"). *Id.* at ¶ 2091. As such, Plaintiffs who were not housed at PVSP do not bring claims against him. *See, e.g.*, *id.* at ¶ 2272 (Plaintiff Richard Adams, who was housed at only ASP, does not bring claims against Brazelton).

22 [5] These prisons include Avenal State Prison ("ASP"); California Correctional Institution; California State Prison-Corcoran;
23 Wasco State Prison ("WSP"); North Kern State Prison; PVSP; California Substance Abuse Treatment Facility and State Prison, both of which are in Corcoran; and Kern Valley State Prison. CAC at ¶ 51. Plaintiffs were housed in these and other correctional facilities within the San Joaquin Valley.

24 [6] Among other things, Plaintiffs allege Defendants knew the following measures would have abated the Valley Fever risks:
25 paving, landscaping, soil stabilization, improved ventilation, respiratory protective gear, and cautioning inmates to stay indoors during high wind conditions. CAC at ¶¶ 12-13.

a) review and analysis of public documents published by the State of California, Department of Corrections and Rehabilitation (CDCR) and other public agencies; b) review and analysis of public filings, press releases and other publications by certain of the defendants and other non-parties; c) review of news articles, medical and other reference sources, as well as postings on the State of California CDCR and correctional facility websites concerning the issues described [in the CAC]; and d) review of other available information concerning CDCR's operations, the medical conditions and treatment described [in the CAC], and the individual defendants.

*Id.* at ¶ 3.

The incidence rates of Valley Fever at these prisons were significantly higher than the rates in the counties in which they are located. For instance, "[i]n comparison with the rate in California (7/100,000), the rate at PVSP was 1,001 times higher (7011/100,000), the rate at ASP was 189 times higher (1326/100,000) and the rate at WSP was 114 times higher (800/100,000)." *Id.* at ¶ 64. The rates at these prisons were much higher than the rate in Kern County, the county with the highest incidence rate of Valley Fever in California (135/100,000). *Id.* at ¶ 66. The rate of Valley Fever cases at PVSP was 38 times the rate of Coalinga residents and 600 times the rate in Fresno County. *Id.* at ¶ 69. Further, the rate at PVSP was 6 times higher than the rate at the adjacent mental health facility. *Id.* at ¶ 76.

African-Americans, Filipinos, individuals over the age of 55, and individuals with "pre-existing health conditions" or compromised/suppressed immune systems are more susceptible to contracting Valley Fever and are more prone to developing disseminated Valley Fever. *Id.* at ¶¶ 71, 81, 84, 86, 2633. African-Americans accounted for approximately 68% of those infected and died at approximately twice the rate of non-black inmates. *Id.* at ¶ 67. "In fact, African-American prisoners comprised 71% of the 34 Valley Fever deaths in CDCR prisons between 2006 and 2011." *Id.* at ¶ 88. In 2013, medical experts found that 70% of the 36 inmate deaths caused by Valley Fever were African-Americans and 76% had an immune-compromised condition, such as HIV or diabetes. *Id.* at ¶ 2635.[7]

Between 2006 and 2012, medical experts, CDCR, California public health agencies, a Fresno County Grand jury, and various media organizations had researched the Valley Fever "epidemic" at San

---

[7] Most, but not all Plaintiffs were at heightened risk of contracting Valley Fever and developing disseminated Valley Fever due to their ethnicity or medical status. *See, e.g.*, CAC at ¶¶ 1066-69 (Plaintiff Koklich does not allege he was at heightened risk for Valley Fever); *id.* at ¶¶ 1313-15 (Plaintiff Morrow does not allege he was at heightened risk for Valley Fever).

4

Joaquin Valley prisons, and circulated numerous reports, memoranda, and studies to prison officials. *See id.* at ¶¶ 91-127. In addition, in 2012, the federal court-appointed Receiver[8] managing the California State prison system's health care program issued "Recommendations for Immediate Response to Coccidioidomycosis in CDCR Prisons." *Id.* at 2632. Plaintiffs allege Defendants were fully aware of the information discussed in these documents, but "took no action." *Id.* at ¶¶ 91, 128-29. Defendants failed to prevent Plaintiffs and other high-risk inmates from being housed at hyper-endemic prisons, although they had the means and ability to do so. *Id.* at ¶¶ 143, 145. Similarly, Defendants failed to implement remedial and preventative measures to reduce the risk of infection at the prisons, although they had the ability and means to do so. *Id.* at ¶¶ 179-80.

The thrust of Plaintiffs' Eighth Amendment claim is that Defendants knew of the "serious, epidemic level of risk of harm," *id.* at ¶ 2598, posed by cocci at San Joaquin Valley prisons, yet consciously decided not to do anything to mitigate those risks or to protect Plaintiffs from them. *Id.* at 258; *id.* at ¶ 2648-49. "In fact, Defendants not only failed to implement remedial measures to reduce Plaintiffs' risk of infection, they persisted in practices that increased that risk." *Id.* at ¶ 2642. Specifically, Defendants continued with construction at the prisons, which churned soil and released cocci, thereby exacerbating the Valley Fever problem. *Id.* at ¶¶ 2643-45. These acts and omissions also provided the basis for Plaintiffs' negligence claim brought under California law.

Defendants move to dismiss both claims under Fed. R. Civ. P. 12(b)(6). Docs. 138, 140. Defendants assert they are entitled to qualified immunity from Plaintiffs' Eighth Amendment claim because they did not violate clearly established law. Doc. 138-1 at 13; Doc. 140 at 21; Doc. 177 at 6; Doc. 178 at 4. Defendants argue Plaintiffs' state law negligence claims fail for a variety of procedural and substantive reasons.[9]

---

[8] In 2005, the Northern District of California ordered the California prison healthcare system to be placed under a federal receivership. *See Plata v. Schwarzenegger*, No. C01-1351 THE, 2005 WL 2932253, at *1 (N.D. Cal. Oct. 5, 2005).

[9] As discussed below, the Court will dismiss without leave to amend Plaintiffs' Eighth Amendment claim on the ground

1

#### IV. <u>STANDARD OF DECISION</u>

2    A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is a challenge to the sufficiency of the

3    allegations set forth in the complaint. A 12(b)(6) dismissal is proper where there is either a "lack of a

4    cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory."

5    *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). In considering a motion to dismiss

6    for failure to state a claim, the court generally accepts as true the allegations in the complaint, construes

7    the pleading in the light most favorable to the party opposing the motion, and resolves all doubts in the

8    pleader's favor. *Lazy Y. Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

9    To survive a 12(b)(6) motion to dismiss, the Plaintiffs must allege "enough facts to state a claim

10   to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim

11   has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

12   reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S.

13   662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for

14   more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at

15   556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops

16   short of the line between possibility and plausibility for entitlement to relief.'" *Id.* (quoting *Twombly*,

17   550 U.S. at 557).

18   "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

19   allegations, a Plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more

20   than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."

21   *Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Thus, "bare assertions . . . amount[ing]

22   to nothing more than a 'formulaic recitation of the elements' . . . are not entitled to be assumed true."

23   *Iqbal*, 556 U.S. at 681. In practice, "a complaint . . . must contain either direct or inferential allegations

24

25   Defendants are entitled to qualified immunity from it. As such, the only jurisdictional basis for Plaintiffs' negligence claim is supplemental jurisdiction, which the Court declines to extend over the claim. The Court therefore need not discuss the parties' in-depth arguments concerning Plaintiffs' negligence claim.

1  respecting all the material elements necessary to sustain recovery under some viable legal theory."

2  *Twombly*, 550 U.S. at 562. To the extent that the pleadings can be cured by the allegation of additional

3  facts, the Plaintiffs should be afforded leave to amend. *Cook, Perkiss and Liehe, Inc. v. N. Cal.*

4  *Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

5  ### III. DISCUSSION

6  **A. The Eighth Amendment.**

7    Under the Eighth Amendment, "prison officials are . . . prohibited from being deliberately

8  indifferent to policies and practices that expose inmates to a substantial risk of serious harm." *Parsons v.*

9  *Ryan*, 754 F.3d 657, 677 (9th Cir. 2014); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993); *Farmer*

10  *v. Brennan*, 511 U.S. 825, 847 (1994) (prison official violates Eighth Amendment if he or she knows of

11  a substantial risk of serious harm to an inmate and fails to take reasonable measures to avoid the harm).

12  "Deliberate indifference occurs when '[an] official acted or failed to act despite his knowledge of a

13  substantial risk of serious harm.'" *Solis v. Cnty. of Los Angeles*, 514 F.3d 946, 957 (9th Cir. 2008)

14  (emphasis added) (quoting *Farmer*, 511 U.S. at 841). Thus, a prisoner may state "a cause of action

15  under the Eighth Amendment by alleging that [prison officials] have, with deliberate indifference,

16  exposed him to [environmental conditions] that pose an unreasonable risk of serious damage to his

17  future health," *Helling*, 509 U.S. at 35.

18    "The second step, showing 'deliberate indifference,' involves a two part inquiry." *Thomas v.*

19  *Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010). "First, the inmate must show that the prison officials were

20  aware of a 'substantial risk of serious harm' to an inmate's health or safety." *Id.* (quoting *Farmer*, 511

21  U.S. at 837). "This part of [the] inquiry may be satisfied if the inmate shows that the risk posed by the

22  deprivation is obvious." *Id.* (citation omitted). "Second, the inmate must show that the prison officials

23  had no 'reasonable' justification for the deprivation, in spite of that risk." *Id.* (citing *Farmer*, 511 U.S. at

24  844 ("[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found

25  free from liability if they responded reasonably.") (footnote omitted).

**B. Qualified Immunity.**

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mattos v. Agarano*, 661 F.3d 433, 440 (9th Cir. 2011) (en banc) (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). "Qualified immunity shields an officer from liability even if his or her action resulted from a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Id.* (citation and quotation marks omitted). "The purpose of qualified immunity is to strike a balance between the competing need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.* (citation and quotation marks omitted). Accordingly, qualified immunity "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Ashcroft v. al–Kidd*, 563 U.S. 731, S.Ct. 2074, 2085 (2011) (citation omitted). The party asserting the defense of qualified immunity bears the burden of proof. *See Gomez v. Toledo*, 446 U.S. 635, 639-41 (1980).

In determining whether an official is entitled to qualified immunity, courts employ a two-pronged inquiry. *Id.* The facts are construed in the light most favorable to the plaintiff. *Estate of Ford v. Ramirez–Palmer*, 301 F.3d 1043, 1050 (9th Cir. 2002). Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Lal v. California*, 746 F.3d 1112, 1116 (9th Cir. 2014). First, a court must determine whether the official violated the plaintiff's constitutional right. *Id.* If a constitutional violation is present, a court must then determine whether the constitutional right was "clearly established in light of the specific context of the case" at the time of the events in question. *Id.* (citation and quotation marks omitted); *see also Saucier v. Katz*, 533 U.S. 194, 201 (2001).

"For the second step in the qualified immunity analysis—whether the constitutional right was clearly established at the time of the conduct—the critical question is whether the contours of the right

1    were 'sufficiently clear' that every 'reasonable official would have understood that what he is doing

2    violates that right.'" *Mattos*, 661 F.3d at 442 (quoting *al–Kidd*, 131 S.Ct. at 2083). "This inquiry . . .

3    must be undertaken in light of the specific context of the case, not as a broad general proposition"

4    *Saucier*, 533 U.S. at 202. "[W]here there is no case directly on point, 'existing precedent must have

5    placed the statutory or constitutional question beyond debate.'" *C.B. v. City of Sonora*, 769 F.3d 1005,

6    1026 (9th Cir. 2014) (citing *al–Kidd*, 131 S.Ct. at 2083).

7          However, "closely analogous preexisting case law is not required to show that a right was clearly

8    established." *Clairmont v. Sound Mental Health*, 632 F.3d 1091, 1109 (9th Cir. 2011) (internal citations

9    and quotations omitted). While "there must be some parallel or comparable factual pattern[,] . . . the

10   facts of already decided cases do not have to match precisely the facts with which [the government

11   employer] is confronted." *Id*. Rather, the preexisting case law must have provided fair warning that the

12   complained-of conduct was unlawful. *Flores v. Morgan Hill Unified Sch. Dist.*, 324 F.3d 1130, 1136-37

13   (9th Cir. 2003) (citation omitted). "Ultimately, the 'clearly established' prong of the qualified immunity

14   test shows deference towards the actions of government officials, but does not shield individuals who

15   are 'plainly incompetent or those who knowingly violate the law.'" *Reza v. Pierce*, __ F.3d __, 2015 WL

16   4899122, at *7 (9th Cir. Aug. 18, 2015) (citation omitted).

17         The Court recently found that some, but not all of the same Defendants were entitled to qualified

18   immunity from materially identical claims brought against them. *See Jackson v. Brown*, No. 13-cv-1055,

19   __ F. Supp. 3d __, 2015 WL 5522088 (E.D. Cal. Sept. 17, 2015), *amended by* 2015 WL 5732826 (E.D.

20   Cal. Sept. 28, 2015). The Court finds that the logic and conclusions of *Jackson*'s qualified immunity

21   analysis likewise apply to all Defendants here. Defendants are entitled to qualified immunity from

22   Plaintiffs' Eighth Amendment claim because the applicable law remains unsettled and unclear.

23   **C. Analysis**

24         **a. The Constitutional Right at Issue.**

25         Although it is beyond dispute that Plaintiffs have a constitutional right to safe conditions of

1    confinement, *see generally Farmer*, 511 U.S. 825, the level of detail at which a court must define the

2    contours of that right in the context of analyzing qualified immunity is less clear. As in *Jackson*, the

3    parties here offer various iterations of the constitutional right at issue with differing levels of specificity,

4    and the Court can conceive of other iterations. *See, e.g.*, Doc. 175 at 14-15; Doc. 178 at 5.

5        Ultimately, however, these varying iterations of the constitutional right at issue in this case are

6    distinctions without any practical difference. The Court need not determine the full contours of the

7    Eighth Amendment in the Valley Fever context, [10] what the constitutional right at issue is in these cases,

8    or whether Plaintiffs have pled a violation of their Eighth Amendment rights sufficiently.[11] As discussed

9    below, under *any* definition of the constitutional right at issue in this case, and even assuming Plaintiffs

10   have pled an Eighth Amendment claim, the substantial and unsettled case law concerning Valley Fever

11   at the district court level establishes that Defendants are entitled to qualified immunity from Plaintiffs'

12   Eighth Amendment claim. This is a case where the Court can "rather quickly and easily decide that there

13   was no violation of clearly established law before turning to the more difficult question whether the

14   relevant facts make out a constitutional question at all." *Pearson*, 555 U.S. at 239. Accordingly, the

15   Court skips the first step of the *Saucier* qualified immunity analysis.

16   **b. Defendants Did Not Violate Clearly Established Law.**

17       The second prong of the qualified immunity analysis requires the Court to determine whether the

18   _____

19   [10] The Supreme Court has cautioned that following a "rigid" qualified immunity analysis "comes with a price": the "expenditure of scare judicial resources on difficult questions that have no effect on the outcome of the case." *Pearson v.*

20   *Callahan*, 555 U.S. 223, 236-37 (2009). This is particularly true where "[a] decision on the underlying constitutional question in a § 1983 damages action . . . may have scant value when it appears that the question will soon be decided by a higher court." *Id.* at 237-28. As it stands, it appears that the Ninth Circuit soon will have the opportunity to resolve the issue of

21   whether Plaintiffs' Eighth Amendment rights were violated. *See Hines v. Youssef*, No. 1:13-cv-357 AWI JLT, 2015 WL 2385095 (E.D. Cal. May 18, 2015) (granting the defendants qualified immunity from the plaintiff's claim that they violated

22   his Eighth Amendment rights by placing him in a Valley Fever-endemic prison, where he contracted the disease), *appeal docketed*, No. 15-16145 (9th Cir. June 8, 2015).

23   [11] The Court acknowledges that it found Plaintiffs in the *Beagle* member cases had stated an Eighth Amendment claim. *See Beagle v. Schwarzenegger*, __ F.3d __, 2014 WL 9866913, at *10 (E.D. Cal. 2014). With regard to the *Beagle* Plaintiffs only,

24   the Court is bound by that conclusion here under the law of the case. *See United States v. Lumni Nation*, 763 F.3d 1180, 1185 (9th Cir.2014). Nonetheless, even assuming all Plaintiffs have satisfied the first prong of the *Saucier* qualified immunity analysis, Defendants are still entitled to qualified immunity from all Plaintiffs' Eighth Amendment claims under the second

25   prong of *Saucier*.

10

1   allegedly violated constitutional right was clearly established at the time that Defendants allegedly

2   violated that right. *Mattos*, 661 F.3d at 442. Defendants must have had "'fair and clear warning' that

3   their conduct [was] unlawful." *Devereaux v. Abbey*, 263 F.3d 1070, 1075 (9th Cir. 2001) (citations

4   omitted). In other words, the question is whether Defendants could have "reasonably but erroneously

5   believed" that their conduct did not violate Plaintiffs' rights. *Id.* at 1074 (citing *Saucier*, 533 U.S. at

6   195).

7          Plaintiffs' alleged injuries—exposure to and contraction of Valley Fever—occurred at different

8   times. *See, e.g.*, CAC at ¶¶ 233-38 (Plaintiff Aubrey alleging he was transferred to PVSP in January

9   2009, but does not allege when he contracted Valley Fever); *id.* at ¶¶ 254, 258 (Plaintiff Baker alleging

10  he was transferred to ASP in July 2011 and contracted Valley Fever in "late 2011"); *id.* at ¶¶ 779-80

11  (Plaintiff Franklin alleging he was transferred to PVSP in January 2009 and diagnosed with Valley

12  Fever in August 2010); *id.* at ¶ 1079 (Plaintiff Lavea alleging he was transferred to PVSP in 2008); *id.* at

13  ¶ 1807 (Plaintiff Torres-Enos alleging he was transferred to PVSP in 2006); *id.* at ¶ 576 (Plaintiff

14  Corning alleging he was transferred to ASP in 2007). It is indeterminable when some Plaintiffs' injuries

15  occurred because they do not allege when they first were housed in a San Joaquin Valley correctional

16  facility, though it appears the earliest any Plaintiff was housed in one of the subject facilities was at

17  some point in 2006. *See, e.g.*, *id.* at ¶¶ 989 (Plaintiff K. Jackson), 1807 (Plaintiff Torres-Enos).

18         Nonetheless, the Court's conclusion below that Defendants are entitled to qualified immunity

19  remains the same regardless of the time at which Plaintiffs' injuries occurred. Regardless of whether the

20  Court looked only to the state of the law as it existed in 2006, or as it exists today, the Court would still

21  conclude that the right at issue was not clearly established. *See Jones v. Hartley*, No. 1:13-cv-1590-

22  AWI-GSA-PC, 2015 WL 1276708, at *2-3 (E.D. Cal. Mar. 19, 2015) ("Courts have yet to find that

23  exposure to valley fever spores presents an excessive risk to inmate health." (collecting cases)); *Smith*,

24  2015 WL 3953367, at *3 (recognizing contrary conclusions in Valley Fever cases within this district).

25  Thus, even if the Court looked at the state of the law at the earliest possible time (*i.e.*, 2006) or at the

1  latest possible time (*i.e.*, today), the Court's conclusion that Defendants are entitled to qualified

2  immunity would be the same. *See Reza*, 2015 WL 4899122, at *7 (assessing state of law on date on

3  which the plaintiff allegedly was arrested unlawfully).

4         This is so because the circumstances in which an inmate's exposure to cocci while incarcerated

5  may support an Eighth Amendment claim are not clear. As the F&Rs correctly recognized, no binding

6  Supreme Court or Ninth Circuit precedent squarely addresses the issue. Doc. 164 at 18-19. The Ninth

7  Circuit has touched on the issue only in brief, undeveloped, and unpublished memorandum decisions.

8         For instance, in *Smith v. Schwarzenegger*, No. CV 1-07-1547-SRB, 2009 WL 900654, at *1

9  (E.D. Cal. Mar. 31, 2009), *rev'd*, 393 Fed. App'x 518 (9th Cir. 2010), the plaintiff brought, among other

10  claims, an Eighth Amendment claim asserting his right to be free from cruel and unusual punishment. In

11  that claim, the plaintiff alleged that he was held in KVSP, which is "located in the San Joaquin Valley

12  where [he is] subjected to the risk of contracting valley fever, in violation of the Eighth Amendment."

13  *Smith*, 2009 WL 900654, at *1. The plaintiff alleged that his being housing at KVSP posed an

14  unconstitutional threat to his health and safety. *Smith*, No. CV 1-7-1547-SRB, Doc. 21 at 7 ("Myself and

15  other inmates . . . in California State Prisoners located in the San Joaquin Valley . . . are being forcibly

16  subjected to contracting . . . Valley Fever"). The plaintiff also alleged that African-Americans, such as

17  himself, and other ethnic groups "are extremely susceptible to contracting Valley Fever." *Id.*

18         Notably, the plaintiff did not allege that he had contracted Valley Fever; he only alleged that he

19  "*may have contracted* Valley Fever but will not know for" many years if he contracted the disease. *Id.*

20  (emphasis added). The plaintiff further alleged that the defendants "have failed to act to remove [him]

21  . . . out of the endemic area where . . . inmates have been infected by Valley Fever and have [died] from

22  Valley Fever." *Id.* at 10. Thus, the plaintiff claimed that his Eighth Amendment rights had been violated

23  "not only by possible present harm but by possible future harm, arising out of exposure to San Joaquin

24  Valley Fever," and the defendants' failure to remove inmates from prisons located in areas endemic to

25  Valley Fever. *Id.* at 10-15.

Visiting District Judge Bolton found that:

Plaintiff has failed to show that any of the named Defendants were deliberately indifferent to a serious risk of harm to Plaintiff's health. Plaintiff does not allege that Defendants were aware of a particular threat to Plaintiff's health or that Plaintiff has been harmed as the result of Defendants' actions or failure to act. Plaintiff alleges only that Defendants are aware of the general presence of valley fever in the areas in which Plaintiff is housed and that Plaintiff may contract valley fever. This is insufficient to establish an Eighth Amendment violation.

*Smith*, 2009 WL 900654, at *2. Accordingly, the claim was dismissed with prejudice. *Id.*

On appeal, the Ninth Circuit reversed in an unpublished, one-page memorandum decision. *Smith v. Schwarzenegger*, 393 Fed. App'x 518, 519 (9th Cir. 2010). The Ninth Circuit observed that the district court dismissed the claim "because it determined that [the plaintiff] failed to allege facts demonstrating that the defendants were deliberately indifferent to a serious risk to his health." *Id.* The court held that "[i]n dismissing with prejudice, the district court erred because it is not beyond doubt that [the plaintiff] could prove no set of facts in support of his claims that would entitled [*sic*] him to relief." *Id.* (citing *Helling*, 509 U.S. at 25 (a prisoner "states a cause of action under the Eighth Amendment by alleging that [defendants] have, with deliberate indifference, exposed him to levels of [environmental tobacco smoke] that pose an unreasonable risk of serious damage to his future health")). The Ninth Circuit therefore vacated and remanded the case "with instructions to allow [the plaintiff] the opportunity to amend his complaint to allege facts demonstrating that the defendants are aware of a substantial risk to [his] health and have not taken action to prevent or minimize that risk." *Id.*[12]

---

[12] On remand, the plaintiff filed a fourth amended complaint against Cate, James Yates, the former warden of PVSP, Jeanne Woodford, the former Secretary of CDCR, and "John Doe Appeals Coordinator," among other defendants. *See Smith*, No. 1:07-cv-1547-SRB, Doc. 65 at 1. Judge Bolton summarized the allegations underlying that claim as follows:

Plaintiff alleges that his Eighth Amendment rights were violated when he was housed in an area with a known valley fever epidemic. Plaintiff alleges that he is particularly susceptible to valley fever because he is African-American and has tuberculosis and hepatitis C. Plaintiff further states that he was recently informed that he has not contracted valley fever and that because of his hepatitis C, he cannot take the valley fever medication. Plaintiff claims that Defendants were aware of the severe risk to his health that results from housing him in this area, but failed to transfer him to another facility . . . .

Plaintiff claims that Defendants Cate and Woodford violated his Eighth Amendment rights when they failed to develop policies for moving high risk inmates, such as Plaintiff, out of prisons located in areas known to have high incidences of valley fever. Plaintiff further claims that while housed at the Pleasant Valley State Prison, he filed a grievance regarding his susceptibility to valley fever and requesting a transfer, but that Defendant Appeals

1    Similarly, the Ninth Circuit reversed this Court with a one-page decision in *Johnson v. Pleasant*

2    *Valley State Prison*, 505 Fed. App'x 631 (9th Cir. 2013). In *Johnson*, the plaintiff brought one claim

3    under § 1983 in which he alleged that his exposure to and contraction of Valley Fever while at PVSP

4    violated his Eighth Amendment rights. *Johnson*, 2012 WL 1297380, at *1. The Magistrate Judge issued

5    F&Rs screening the complaint and summarized the plaintiff's allegations in part, as follows:

6        Plaintiff . . . is incarcerated at [PVSP], and brings this action against Defendants . . . alleging
         deliberate indifference in violation of the Eighth Amendment. Shortly after being transferred to
7        PVSP on August 20, 2010, Plaintiff began experiencing flu-like symptoms and was eventually
         diagnosed with Valley Fever. Plaintiff alleges that Defendants were aware through CDCR
8        memorandums that PVSP and seven other facilities were constructed in "hyperendemic" areas.
         Defendants allegedly have ignored a threat to Plaintiff, and every other prisoner who is housed at
9        PVSP, by placing them where they are exposed to "environmental hazards" in violation of the
         Eighth Amendment's prohibition against cruel and unusual punishment.

10
     *Id.* The Magistrate Judge found that the plaintiff failed to state a claim under the Eighth Amendment,
11
     reasoning:
12
13       To state a claim that the presence or prevalence of Valley Fever at PVSP constituted a danger to
         Plaintiff's health, Plaintiff must allege facts sufficient to support a claim that prison officials
14       knew of and disregarded a substantial risk of serious harm to him . . . . Even if the risk of
         contracting Valley Fever is higher at PVSP than in other areas of the state, the Court declines to
15       find that, due to its location, the prison itself constitutes a substantial risk of harm to inmates . . .
         There is no support for such a sweeping proposition, and the Court finds that Plaintiff's Eighth
16       Amendment claim arising from the mere fact that he is being housed at PVSP is not cognizable
         under section 1983.
17
     *Id.* at *3 (citations omitted).
18
         Plaintiff filed objections to the F&Rs. *Id.* at Doc. 14. Citing *Farmer*, 511 U.S. 825, and *Helling*,
19
     509 U.S. 25, the plaintiff argued that the defendants exhibited deliberate indifference to him by placing
20
     him at an excessive risk of contracting Valley Fever while incarcerated at PVSP. *Id.* at 2-3. This Court
21
     _____

22       Coordinator was deliberately indifferent to a risk to Plaintiff's health when he informed Plaintiff that he would not
         process the grievance unless Plaintiff had already contracted valley fever. Plaintiff claims that Defendant Appeals
23       Coordinator's refusal to process the grievance hindered his ability to grieve the issue at any of his later housing
         assignments. Finally, Plaintiff claims that Defendant Yates was aware of the risk of Plaintiff contracting valley
24       fever, but did not transfer him, and that Defendant Yates developed a policy requiring Plaintiff to "contract valley
         fever before he can receive relief from exposure to valley fever."

25   *Id.* at 3, 6. Judge Bolton found that these allegations, "[v]ery liberally construed . . . adequately stated Eighth Amendment
     claims against Defendants Cate, Woodford, Yates, and John Doe Appeals Coordinator." *Id.* at 6.

1    adopted the Magistrate Judge's F&Rs in full and dismissed the plaintiff's sole Eighth Amendment

2    claim. *See* No. 1:11-CV-191-LJO-BAM PC, *Johnson v. Pleasant Valley State Prison*, Doc. 15.

3           The Ninth Circuit reversed, holding that

4         dismissal of [the plaintiff's] action was improper at this early stage because [the plaintiff] alleged
          that prison officials were aware that inmates' exposure to valley fever posed a significant threat
5         to inmate safety yet failed to take reasonable measures to avoid that threat . . . . *Farmer v.
          Brennan*, 511 U.S. 825, 847 (1994) (a prison official violates the Eighth Amendment prohibition
6         against inhumane conditions of confinement if he or she knows of a substantial risk of serious
          harm to an inmate and fails to take reasonable measures to avoid the harm).

7    *Johnson*, 505 Fed. App'x at 632.

8           In *Johnson*, the Ninth Circuit "express[ed] no opinion as to the sufficiency or merit of [the

9    plaintiff's] allegations." *Id.* And, as the F&Rs observed, the Ninth Circuit in *Smith* provided no

10   "discussion of what would be required to state a claim under the Eighth Amendment." Doc. 164 at 36

11   n.5; *Smith*, 393 Fed. App'x at 519. Accordingly, the Court finds that *Johnson* and *Smith* do not clearly

12   establish the right at issue in this case and did not give Defendants notice that they may have violated

13   Plaintiffs' Eighth Amendment rights, particularly given that it is a "rare instance in which, absent any

14   published opinions on point or overwhelming obviousness of illegality, [a court] can conclude that the

15   law was clearly established on the basis of unpublished decisions only." *Sorrels v. McKee*, 290 F.3d

16   965, 971 (9th Cir. 2002).[13] In short, the Ninth Circuit's Valley Fevers decisions could not have put

17

18   _____

19   [13] This conclusion is further reinforced by the Ninth Circuit's decision in *Holley v. Scott*, 576 Fed. App'x 670 (9th Cir. 2014),
     another one-page memorandum decision addressing an Eighth Amendment claim premised on the plaintiff-inmate's exposure
20   to Valley Fever spores while incarcerated. In that case, the Magistrate Judge screened the plaintiff's second amended
     complaint, which alleged an Eighth Amendment claim based on his exposure to Valley Fever spores while incarcerated at
     PVSP, and dismissed the claim without leave to amend. *Holley v. Scott*, No. 1:12-cv-1090-MJS (PC), 2013 WL 3992129, at
21   *5 (E.D. Cal. Aug. 1, 2013). The plaintiff alleged that he was an African-American at medically high risk of contracting
     Valley Fever because of his race and health status. *Id.* at *1. The Magistrate Judge found that the plaintiff failed to allege
22   facts demonstrating that the defendants acted with deliberate indifference because the plaintiff did not allege that the
     defendants were aware of the risks posed by Valley Fever spores at PVSP. *Id.* at *5. On appeal, the Ninth Circuit affirmed.
     *Holley*, 576 Fed. App'x at 670 (citing *Farmer*, 511 U.S. at 837). Although *Smith* and *Johnson* involved materially similar
23   allegations, the Ninth Circuit's reversals in those cases perhaps can be explained by the fact that they involved original
     complaints dismissed without leave to amend, whereas *Holley* involved a second amended complaint filed after the
     Magistrate Judge had "twice previously instructed Plaintiff on the legal standard and given him opportunity to allege facts
24   which meet it," yet the second amended complaint failed to do so. *Holley*, 2013 WL 3992129, at *5. In addition, the plaintiff
     in *Holley* had satisfied the first, objective prong of his Eighth Amendment claim, but had failed on the second, subjective
25   prong of the claim in that he failed to allege facts showing that the defendants knew of the alleged risk of Valley Fever to
     which he was exposed. *See id.* at *4-5; *Holley*, Fed. App'x at 670 ("The district court properly dismissed Holley's action

Defendants on notice that their conduct was unlawful.

In the absence of controlling authority, a defendant nonetheless may not be entitled to qualified immunity if the illegality of the defendant's conduct was overwhelmingly obvious, *id.*, or "a consensus of cases of persuasive authority" would have put the defendant on notice that his/her conduct was unlawful. *Wilson v. Layne*, 526 U.S. 603, 617 (1999). The F&Rs contain a thorough review of Valley Fever cases in this district. *See* F&Rs at 28-31. Simply put, those cases show that there has been longstanding disagreement among the judges of this district as to whether and under what circumstances inmates housed at prisons in the San Joaquin Valley, where Valley Fever is endemic, may state an Eighth Amendment claim for being exposed to Valley Fever spores while incarcerated. *See id.*

This disagreement has led to diametrically opposed conclusions at times. Critically, judges have disagreed as to whether allegations that an inmate's ethnicity increases the risk of contracting Valley Fever and developing disseminating Valley Fever states an Eighth Amendment claim.[14] Judges also have disagreed as to whether an inmate's allegations that medical conditions increase the risk of

---

because Holley failed to allege facts showing that defendants were deliberately indifferent to a risk of Holley contracting Valley Fever by housing him at Pleasant Valley State Prison.") (citation omitted); *but see Sullivan v. Kramer*, 609 Fed. App'x 435, 436 (9th Cir. 2015) (reversing dismissal of civil detainee's safe conditions claim in which he alleged the defendant "knew of the life-threatening dangers of valley fever . . . but failed to take any preventative measures to protect [him]"); *Samuels v. Ahlin*, 585 Fed. App'x 636, 637 (9th Cir. 2014) (reversing dismissal of civil detainee's safe conditions claim in which he alleged defendants "knew of the life-threatening risk of building Coalinga State Hospital in a highly endemic area for valley fever, but nonetheless approved or failed to stop the facility's construction").

[14] *Compare, e.g.*, *Smith v. Brown*, No. 1:12-cv-238-AWI-JLT (PC), 2012 WL 1574651, at *3-4 (E.D. Cal. May 3, 2012) (holding that African-American plaintiff's allegations that (1) he was exposed to Valley Fever while incarcerated at PVSP, a "hyperendemic area" experiencing an "outbreak of illness"; (2) African-Americans are more susceptible to Valley Fever; and (3) the defendants knew of Valley Fever risks but failed to act were insufficient to state Eighth Amendment claim because the defendants could not "be held liable for housing Plaintiff in an area where there is a potential to be exposed to Valley Fever spores"); *Clark v. Igbinosa*, No. 1:10-cv-1336-DLB PC, 2011 WL 1043868, at *2 (E.D. Cal. Mar. 21, 2011) (holding that the African-American plaintiff's allegations that (1) African-Americans are the highest risk group for disseminated Valley Fever and (2) being housed at PVSP did not state Eighth Amendment claim because "[g]oing to an area which contains valley fever and contracting valley fever are not sufficient to state an Eighth Amendment claim"); *James v. Yates*, No. 1:08-cv-1706-DLB PC, 2010 WL 2465407, at *3-4 (E.D. Cal. June 15, 2010) (same); *Moreno v. Yates*, No. 1:07-cv-1404-DGC, Doc. 1 at 9-10, 2010 WL 1223131, at *2 (E.D. Cal. Mar. 24, 2010) (granting summary judgment against plaintiff-inmate who contracted Valley Fever at PVSP and who alleged certain racial groups are more susceptible to developing disseminating Valley Fever because "society plainly tolerates the health risks" posed by Valley Fever at PVSP); *King v. Avenal State Prison*, No. 1:07-cv-1283-AWI-GSA (PC), 2009 WL 546212, at *4 (E.D. Cal. Mar. 4, 2009) ("[N]o courts have held that exposure to Valley Fever spores presents an excessive risk to inmate health") *with, e.g.*, *Chaney v. Beard*, No. 1:14-cv-369-MJS, 2014 WL 2957469, at *3 (E.D. Cal. June 30, 2014) ("Plaintiff alleges that he is an African American male and is therefore at an increased risk of harm from Valley Fever. This is sufficient to satisfy the first element of Plaintiff's Eighth Amendment claim.").

1    contracting Valley Fever and developing disseminated Valley Fever states an Eighth Amendment

2    claim.[15] Notably, Plaintiffs acknowledge both of these instances of disagreement. *See* Doc. 175 at 28

3    (arguing that courts in this district are "*nearly* uniform" in their Valley Fever decisions and "[*m*]*ost*

4    courts" have found that a plaintiff's heightened susceptibility to Valley Fever satisfies *Farmer*'s

5    objective component (emphases added)).

6        The Court acknowledges that not all Valley Fever cases concern the same factual allegations or

7    the same disposition for the same reasons. Unlike Plaintiffs here, some plaintiffs in Valley Fever cases

8    have simply alleged their constitutional rights were violated because they contracted Valley Fever while

9    incarcerated. *See, e.g.*, *King*, 2009 WL 546212, at *4 ("[T]o the extent that Plaintiff is attempting to

10   pursue an Eighth Amendment claim for the mere fact that he was confined in a location where Valley

11   Fever spores existed which caused him to contract Valley Fever, he is advised that no courts have held

12   that exposure to Valley Fever spores presents an excessive risk to inmate health"). Other cases have

---

14   [15] *Compare, e.g.*, *Moreno*, 2010 WL 1223131, at *2 (granting summary judgment against plaintiff-inmate because "society plainly tolerates the health risks" posed by Valley Fever at PVSP); *Gilbert v. Yates*, No. 1:09-cv-2050-AWI-DLB, 2010 WL

15   5113116, at *1, 3 (E.D. Cal. Dec. 9, 2010) (plaintiff with asthma, pulmonary conditions, and hepatitis C who contracted Valley Fever while incarcerated at PVSP did not state Eighth Amendment medical needs claim because even "[a]ssuming

16   that the risk of contracting Valley Fever is higher at PVSP than in other areas of the state and that the disease is fatal in some cases, the Court declines to find that the prison itself, due to its location, constitutes a substantial risk of harm to inmates"), *aff'd*, 479 Fed. App'x 93 (9th Cir. 2012); *Schroeder v. Yates*, No. 1:10-cv-433-OWW-GSA PC, 2011 WL 23094, at *1 (E.D.

17   Cal. Jan. 4, 2011) (inmate with emphysema and chronic obstructive pulmonary disease could not state claim for exposure to Valley Fever spores while incarcerated at PVSP); *Ayala v. Yates*, No. 1:10-cv-50-MJS (PC), 2011 WL 4527464, at *3 (E.D.

18   Cal. Sept. 28, 2011) ("Exposure to [Valley Fever] at PVSP is not in and of itself an excessive risk to inmate health; Defendants had no duty to take steps to reduce the risk."); *Miller v. Brown*, No. 1:12-cv-1589-LJO-BAM PC, 2013 WL 6712575, at *6 (E.D. Cal. Dec. 18, 2013) (dismissing inmate's Eighth Amendment claim, in part, because he did not

19   "indicate if he in fact contracted Valley Fever") *with, e.g.*, *Whitney v. Walker*, No. 1:10-cv-1963 DLB PC, 2012 WL 893783, at *4 (E.D. Cal. Mar. 15, 2012) (plaintiff's allegation that his immune system was compromised by cancer stated Eighth

20   Amendment claim for contraction of Valley Fever while incarcerated at ASP); *Owens v. Trimble*, No. 1:11-cv-1540-LJO-MJS (PC), 2012 WL 1910102, at *2 (E.D. Cal. May 25, 2012) ("Plaintiff has alleged that his asthma increases the risk of

21   infection [of Valley Fever] and thus satisfies the first element of his Eighth Amendment claim."); *Sparkman v. Calif. Dep't of Corrections and Rehab.*, No. 1:12-cv-1444-AWI-MJS (PC), 2013 WL 1326218, at *3 (E.D. Cal. Mar. 29, 2013) ("Exposure to Valley Fever with such a preexisting lung condition is also a serious medical condition sufficient to satisfy the first prong

22   of an Eighth Amendment claim based on Valley Fever exposure.") (citations omitted); *Wood v. Brown*, No. 1:11-cv-1846-RRB, 2013 WL 1759099, at *2 (E.D. Cal. Apr. 24, 2013) (holding that inmate could potentially state Eighth Amendment

23   claim for being transferred to ASP where he contracted Valley Fever if officials responsible for transfer were properly named); *see also Beagle*, 2014 WL 9866913, at *10 (disagreeing with findings and recommendations and holding that

24   inmates "need not demonstrate that they are at a higher risk of contracting Valley Fever or a more severe form of the disease to state an Eighth Amendment claim"); *see also Borquez v. Arpaio*, No. CV 07-226-PHX-DGC (JCG), 2007 WL 625925, at *3 (D. Ariz. Feb. 26, 2007) (holding that plaintiff-inmate's allegation "that he has been exposed to asbestos and valley fever"

25   while incarcerated failed to state Eighth Amendment claim).

1   involved inmates who, unlike some of the Plaintiffs, had no increased risk factors for contracting Valley

2   Fever or disseminated Valley Fever. *See, e.g.*, *Ayala*, 2011 WL 4527464, at *1; *see also Gaona v. Yates*,

3   No. 1:09-cv-999-SKO PC, 2010 WL 2843163, at *3 (E.D. Cal. July 19, 2010) (finding plaintiff could

4   not state Eighth Amendment claim because he only exhibited "flu-like symptoms" when he contracted

5   Valley Fever while incarcerated at PVSP). And in some cases, the plaintiff did not allege the defendant's

6   (or defendants') acts or omissions caused the plaintiff to be exposed to a substantial risk of Valley Fever.

7   *See, e.g.*, *Tholmer v. Yates*, No. 1:06-cv-1403-LJO-GSA, 2009 WL 174162, at *3 n.3 (E.D. Cal. Jan. 26,

8   2009) ("Plaintiff does not allege that the acts or omissions of Defendants have caused an excessively

9   high risk of contracting valley fever at PVSP.").

10      Some cases, however, involved allegations that are materially identical to Plaintiffs' allegations.

11   In *Moreno*, for instance, the plaintiff contracted Valley Fever in 2006 while housed at PVSP in. 07-cv-

12   1404-DGC, Doc. 1 at 7. The plaintiff alleged the defendants knew that (1) PVSP was in a

13   "hyperendemic" location; (2) "[p]eople with weakened immune systems and of certain racial groups are

14   susceptible [to] developing . . . disseminated valley fever"; (3) "the infection rate among prisoners is 38

15   times greater than for residents of Coalinga and 600 times greater than for residents of Fresno county";

16   (4) that there was "a high probability" that plaintiff would be infected with Valley Fever; and (5) the

17   defendants had not "done anything to protect [his] health and personal safety." *Id.* at 7-18. The court

18   granted the defendants' motion for summary judgment, reasoning that "[b]y placing a prison and other

19   extensive facilities in the PVSP location, attended by prison employees, officials, and support personnel,

20   as well as inmates, society plainly tolerates the health risks of that location." *Moreno*, 2010 WL

21   1223131, at *2.

22      In *Jones v. Igbinosa*, the plaintiff, who contracted Valley Fever while incarcerated at PVPS,

23   alleged that PVSP "is [in] an epidemic area and that Blacks Afro-Americans and Filipinos are at greater

24   risk of complications from [Valley Fever]." No. 08-cv-163-LJO-SKO PC, 2010 WL 2838617, at *2

25   (E.D. Cal. July 19, 2010), *aff'd*, 467 Fed. App'x 604 (9th Cir. 2012). The court dismissed the complaint

1    based on, among other things, a finding that "the risk posed by valley fever was [not] 'sufficiently

2    serious'" because the plaintiff did not allege that "he suffered any serious life threatening complications

3    from the disease," and alleged that "'[i]n most cases, the infection . . . is usually handled by the body

4    without permanent damages." *Id.* at *3.

5         The plaintiff's allegations in *Ayala* were largely the same as those in *Jones*. *See* 2011 WL

6    4527464, at *1. Although *Ayala* did not allege that certain individuals are more susceptible to Valley

7    Fever, he alleged that PVSP, where he was housed, is "hyper-endemic for Valley Fever infection and

8    has dramatically higher rates of infection than other penal institutions," yet the defendants "did not act to

9    mitigate the risk." *Id.*  The court dismissed the plaintiff's Eighth Amendment claim without leave to

10   amend on the ground that "Plaintiff's claim that the Defendants are liable because they were aware of

11   the risk and did not act to mitigate the likelihood of infection does not state an actionable claim." *Id.* at

12   *3. The court further held that "[e]xposure to the disease at PVSP is not in and of itself an excessive risk

13   to inmate health; Defendants had no duty to take steps to reduce the risk." *Id.* The court therefore

14   concluded that the plaintiff "cannot state a cognizable claim based on the fact that he was exposed to

15   Valley Fever at PVSP" because "[c]laims based on Valley Fever exposure and contraction fail to satisfy

16   the first prong of the Eighth Amendment analysis, i.e., that the deprivation is sufficiently serious." *Id.*

17        In *Smith v. Brown*, the plaintiff, who contracted Valley Fever in 2009 while incarcerated at

18   PVSP, alleged as follows:

19        Plaintiff contends that "black inmates in general are highly susceptible to Valley Fever."  He also
     claims that each of the defendants was aware that Plaintiff was being sent to a "hyperendemic"

20   area institution, but refused to warn him of such a risk. Plaintiff alleges that Defendants failed to
     follow directions set forth in a November 20, 2007 Memorandum regarding "Exclusion of

21   Inmate–Patients Susceptible to Coccidioidomycosis from Highest Risk Area Institutions" that
     would have prevent him from acquiring Valley Fever. Plaintiff claims Defendants' actions and

22   failures to act violated the Eighth Amendment.

23   2012 WL 1574651, at *3. Observing that "[c]ourts have found that claims like Plaintiff's which allege

24   Eighth Amendment violations for contracting Valley Fever are insufficient to establish an Eighth

25   Amendment violation," the court held "Defendants cannot, therefore, be held liable for housing Plaintiff

1    in an area where there is a potential to be exposed to Valley Fever spores." *Id.* at *4.

2         In *Cooper v. Igbinosa*, the plaintiff, a diabetic incarcerated at PVSP, failed to state an Eighth

3    Amendment claim. 2012 WL 5186660, at *2 (E.D. Cal. Oct. 17, 2012). The plaintiff alleged:

4         From 2001 through 2005, soil at PVSP was disturbed greatly for the construction of a mental
     health hospital and a segregation unit. Defendant Yates worked at PVSP beginning in October
5    2003. He was aware of the presence of valley fever in the area. Defendants Yates and Igbinosa
     are responsible for all inmates' health and safety. During the construction, Defendants had notice
6    of an increase in valley fever cases amongst the inmates at PVSP, from 80 in 2003, 66 in 2004,
     187 in 2005, and 1145 in 2006. Valley fever is a disease arising from spores found near the
7    surface of soil, or in the air when the soil is disturbed. Defendants did not take any corrective
     measures or give fair notice regarding the outbreak of valley fever from 2003 through 2006, such
8    as preventing or erecting barriers for blowing dirt, educating inmates and staff, increasing ground
     cover, advising inmates to stay indoors, wet the ground, or give out masks. Plaintiff is diabetic.
9    In June or July of 2006, Plaintiff became sick and went to the medical on B-yard at PVSP . . . .
     Plaintiff was hospitalized for weeks because of valley fever, suffering chronic breathing
10   problems, acute coughing, severe weight loss, and chest and heart problems. Plaintiff remained
     under doctor care for valley fever through 2010.

11   The court dismissed the plaintiff's claim, finding that the plaintiff had "not sufficiently alleged facts

12   which indicate that the harm Plaintiff risked was an excessive risk of serious harm." *Id.* at *2. Although

13   the plaintiff had "alleged facts which indicate that the chance of contracting valley fever increased

14   during the construction period," he had "not alleged facts which indicate that this increase in risk was

15   excessive." *Id.* at *2; *see also Barnhardt v. Cate*, No. 1:10-cv-1351-LJO-GBC (PC), 2011 WL 2446372,

16   at *5 (E.D. Cal. June 15, 2011) (allegation that diabetes made the plaintiff more susceptible to

17   contracting Valley Fever did not support Eighth Amendment claim).

18        For similar reasons, the court dismissed without leave to amend the plaintiff's Eighth

19   Amendment claim in *Harvey v. Gonzalez*, No. CV 10-4803-VAP (SP), 2011 WL 4625710 (C.D. Cal.

20   July 27, 2011), *adopted in full*, 2011 WL 4625700 (C.D. Cal. Oct. 5, 2011). The plaintiff alleged his

21   exposure to Valley Fever while incarcerated at PVSP violated his Eighth Amendment rights. *Id.* at *2.

22   The plaintiff alleged that African-Americans are at a "far greater risk of coming down with [Valley

23   Fever] based on their immune systems." *Id.* at *1. The court held that "[m]ere exposure to [cocci] is

24   insufficient to constitute an excessive risk of harm to [the plaintiff's] health." *Id.* at *3. Although the

25

1    plaintiff's ethnicity was unknown, the court held that, even if plaintiff were able to allege that he was an

2    African-American and that the defendants knew African-Americans were at higher risk of contracting

3    Valley Fever, "that still would be insufficient to state a claim that defendants deliberately exposed [him]

4    to an excessive risk of harm by housing him at PVSP." *Id.*

5           In *Gilbert*, the plaintiff, an inmate at PVSP who alleged his asthma, pulmonary conditions, and

6    hepatitis C rendered him more vulnerable to Valley Fever, failed to state a claim based on his exposure

7    to and contraction of Valley Fever while incarcerated at PVSP. 2010 WL 5113116, at *1, 3. The court

8    reasoned that even "[a]ssuming that the risk of contracting Valley Fever is higher at PVSP than in other

9    areas of the state and that the disease is fatal in some cases, the Court declines to find that the prison

10   itself, due to its location, constitutes a substantial risk of harm to inmates."[16] *Id.* at *3.

11          Other judges, however, have found that "the first prong of an Eighth Amendment claim is

12   satisfied where the plaintiff has identified a factor responsible for either increasing the risk of

13   contraction [of Valley Fever] or the severity of infection." *Chaney v. Beard*, No. 1:14-cv-369-MJS, 2014

14   WL 2957469, at *3 (E.D. Cal. June 30, 2014). African-American ethnicity has been accepted as an

15   increased risk factor, as have various medical conditions, particularly those that affect an individual's

16   immune system. *See id.* (collecting cases); *see also Hunter v. Yates*, No. 1:07-cv-151-AWI-SMS-PC,

17   2009 WL 233791, at *3 (E.D. Cal. Jan. 30, 2009) (plaintiff alleging he "was exposed to a high risk of

18   contracting valley fever" stated claim "[u]nder minimal federal notice pleading standards"); *Thurston v.*

19   *Schwarzenegger*, No. 1:08-cv-342-AWI-SMS PC, 2008 WL 2020393, at *1 (E.D. Cal. May 9, 2008)

20   (plaintiff stated claim based on allegations that "his medical condition puts him at risk for contracting

21   Valley Fever"). Some judges have found that a plaintiff need not be at a heightened risk for contracting

22   Valley Fever or developing disseminated Valley Fever to state an Eighth Amendment claim. *See, e.g.*,

23   *Beagle*, 2014 WL 9866913, at *10; *Jackson v. Davey*, No. 1:14-cv-1311-LJO-MJS (PC), 2015 WL

24   _____

25   [16] The Court notes that the Ninth Circuit apparently rejected this logic in *Johnson*, 505 Fed. App'x 631.

3402992, at *5 (E.D. Cal. May 27, 2015).

Given this obvious, legitimate, and reasonable disagreement among judges, the Court finds that Defendants are entitled to qualified immunity from Plaintiffs' Eighth Amendment claim, regardless of how its underlying constitutional right is defined. Even assuming Defendants' conduct was unlawful in this case—an issue which the Court need not and does not decide—the disagreement among judges with regard to analogous Valley Fever cases brought by inmates in San Joaquin Valley prisons establishes that the right at issue here was not sufficiently clear such that Defendants had "'fair warning' that their conduct was unlawful." *Flores*, 324 F.3d at 1137.[17] "If judges thus disagree on a constitutional question, it is unfair to subject [public officials] to money damages for picking the losing side of the controversy." *Wilson*, 526 U.S. at 618; *see also Bahrampour v. Lampert*, 356 F.3d 969, 977 (9th Cir. 2004) ("The fact that there was a conflict in the views of district court judges on the issue demonstrates that the constitutionality of the regulations was not clearly established.").

Further, because of this disagreement, the Court cannot find that Defendants' conduct was obviously illegal (much less overwhelmingly so) because "[t]he state of the law was at best undeveloped." *Wilson*, 526 U.S. at 617.[18] This is particularly true given that the issue of Valley Fever at

---

[17] The Court recognizes that all of the cases discussed above concerning the district courts' disagreement on Valley Fever issues postdate some of the Plaintiffs' injuries, and a number of those cases postdate the injuries of many Plaintiffs. But, in the Court's view, the fact that the law remains unclear *today* means that it has never been clearly established. *See Rish v. Johnson*, 131 F.3d 1092, 1096 n.5 (4th Cir. 1997) ("The events underlying the inmates' claim occurred over the period of 1988 to 1992. During this period, Eighth Amendment jurisprudence was evolving. However, for ease of discussion, we consider the state of law at the end of the period at issue, reasoning that if the law was not so clearly established in 1992 that the prison officials were not entitled to qualified immunity, it could not have been so earlier."). Although "the fact that a single judge, or even a group of judges, disagrees about the contours of a right does not automatically render the law unclear," *Safford Unified Sch. Dist. No. 1 v. Redding*, 557 U.S. 364, 378 (2009), given the extensive and substantial litigation concerning Valley Fever that has occurred at the district court level, to find that Defendants are not entitled to qualified immunity would require the Court to conclude that a number of judges were unaware of or repeatedly disregarded clearly established law for years. The Court declines to entertain that conclusion.

[18] The Court notes that visiting District Judge Bolton, relying on this Court's prior order in *Jackson v. California*, No. 1:13-cv-1055-LJO-SAB, 2014 WL 670104 (E.D. Cal. Feb. 20, 2014), recently found that former Governor Schwarzenegger and various PVSP and ASP officials were not entitled to qualified immunity from an African-American plaintiff's claim that his contracting Valley Fever while housed at PVSP violated his Eighth Amendment rights. *See Smith v. Schwarzenegger*, No. 07-cv-1547 SRB (PC), 2015 WL 106337, at *2 (E.D. Cal. Jan. 7, 2015). This further reinforces the Court's conclusion that the unsettled state of the law pertaining to Valley Fever cases within this district entitles Defendants to qualified immunity from Plaintiffs' Eighth Amendment claim.

1   San Joaquin Valley prisons has been the subject of substantial litigation within this District,[19] yet no

2   "consensus of cases" has emerged "such that a reasonable [prison official] could not have believed that

3   his actions were lawful." *Id.* Although that litigation has shed some light on the issue, no authority has

4   "fleshed out 'at what point the risk of harm from [Valley Fever] becomes sufficiently substantial for

5   Eighth Amendment purposes.'" *Estate of Ford*, 301 F.3d at 1051 (quoting *Farmer*, 511 U.S. at 834

6   n.3)). The Court therefore GRANTS WITHOUT LEAVE TO AMEND Defendants' motion to dismiss

7   Plaintiffs' Eighth Amendment claim because Defendants have established that they are entitled to

8   qualified immunity from the claim.

9       Accordingly, the Court:

10      1. DISMISSES WITHOUT LEAVE TO AMEND Plaintiffs' Eighth Amendment claim on the

11      ground Defendants are entitled to qualified immunity from the claim; and

12      2. ADOPTS IN FULL the Magistrate Judge's recommendation to decline supplemental

13      jurisdiction over Plaintiffs' California state law negligence claim and DISMISSES the claim

14      WITHOUT LEAVE TO AMEND.

15      The Court will <u>not</u> order the Clerk of Court to close this case at this time so that the Magistrate

16  Judge can rule on Plaintiffs' pending motion to amend the CAC (Doc. 182).

17

18  IT IS SO ORDERED.

19      Dated:   **October 7, 2015**          **/s/ Lawrence J. O'Neill**
                                              UNITED STATES DISTRICT JUDGE

20

21

22  _____

23  [19] *See Hines*, 2015 WL 2385095, at *4 ("A Westlaw search of all federal decisions in the Ninth Circuit using the word string
    Valley Fever" returns about 420 responses with case filings beginning around 1976 . . . . Beginning in 2005, the frequency of
    case filings increases dramatically and the typical type of case changes dramatically. Even a casual inspection of the listings

24  from cases commenced in the last ten years shows that the overwhelming majority involve claims against state or federal
    correctional institutions in what has been termed the hyper-endemic cocci zone of the southern San Joaquin Valley"); *Smith*,
    2015 WL 3953367, at *3 (recognizing disagreement between judges of this Court concerning Valley Fever cases as of June

25  29, 2015).

23

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25